## CARRIER v. COMMONWEALTH.

Court of Appeals of Kentucky.
Sept. 28, 1951.

Fred Lisanby, Georgetown, for appellant.

A. E. Funk, Atty. Gen., Guy L. Dickinson, Asst. Atty. Gen., for appellee.

MOREMEN, Justice.

The appellant was tried in the Scott Circuit Court for speeding and the following judgment was entered: "The above styled action coming on for hearing by agreement of parties before the Judge of this Court without the intervention of a jury, and the Commonwealth of Kentucky having submitted its evidence in said case and the defendant, Ward Carrier, having declined to testify or submit any evidence, and it appearing to the Court that the Prather Speed device which was used in determining the speed that the defendant was travelling at the time and place in question is an accurate device for determining speed as shown by expert testimony and it further appearing that a stop watch used in said device was proven accurate at said time and place of said test and that the mechanism of said device was accurate and it further appearing to the Court that the defendant was exceeding the prescribed speed at said time and place, and the Court being sufficiently advised, it is now ordered and adjudged that the defendant, Ward Carrier, be and is hereby adjudged guilty of the offense charged, of speeding, and his fine as such is fixed at $50.00, to all of which the defendant objects and excepts."

The question to be determined on this appeal is whether or not a person may be convicted for speeding upon the evidence alone of speeding as determined by a mechanical and electrical device described as follows: The first unit called a timer box is carried in the police cruiser. The second unit is called a road switch box and is placed on the edge of the road approximately 300 feet from the first unit which is in the squad car. The third unit is also a road switch box and is placed on the edge of the road 366 feet and 9 inches beyond the second unit of the device. This lineal measurement is selected because an automobile proceeding at the rate of 25 miles per hour would require 10 seconds to cover the distance, and serves as a convenient basis for determining the rate of speed of an automobile by the time which elapses in traversing the measured section of the road. Each road switch has attached to it a rubber hose which is stretched across the highway at the point where the road switch box is placed. Each road switch is connected electrically to the timer box in the police cruiser by wire conduits. Upon the approach of a speeding car the operator activates the apparatus, but this action does not start the watch or timer box which starts the measurement of time only when the front wheels of the car being checked cross the hose. The timer mechanism is so arranged that no other closely following wheels will stop the watch. When the operator sees that the car being checked will be the next car to pass over the second rubber hose, he closes the switch on the timer box corresponding to the second road switch. When the front wheels of the car being checked cross the second hose the timer mechanism is stopped. By reference to a chart, the speed of the vehicle may be determined at a glance.

It must be admitted that courts have viewed with some skepticism any devices which are suggested as a substitute for sensory perception. The findings of lie detectors, mechanical means for testing degrees of drunkenness or sobriety, and sim-

ilar apparatus, have been rejected entirely by some courts, and usually upon the ground that the accuracy of the instrument had not been established. However, when it is shown that an instrument meets the tests of accuracy, its findings are accepted in evidence. We have long accepted the testimony of police officers based upon the calibrations of a speedometer as competent evidence, even though it is a matter of common knowledge that various degrees of friction, temperature of the atmosphere, air pressure in the tires, and other factors affect the operation of the instrument to some extent. The question of whether a policeman's testimony regarding the speed of an automobile, as determined by a tested speedometer, was sufficient to sustain a conviction for speeding was presented in the case of City of Spokane v. Knight, 96 Wash. 403, 165 P. 105, 106, in the year of 1917, and the court decided: "Appellant next argues that the evidence is insufficient to sustain the verdict, because it does not show that the appellant operated his automobile more than 20 miles per hour. An officer of the city testified, in substance, that he took the speed of the appellant by means of a motorcycle, to which was attached a tested speedometer; that he took appellant's speed from Garfield street to Sherman street, a distance of more than a thousand feet, maintaining an equal speed at a constant distance of about 50 feet behind the appellant, and his speedometer registered 30 miles an hour; that, between two other streets, upon the same occasion, he took his speed, and the speedometer on his motorcycle registered 27 miles per hour. This same witness testified that his speedometer had been tested as often as three times a week, and was found to be correct. The appellant testified that he had a speedometer on his automobile, which he testified was correct, and which showed that he was traveling at less than 20 miles per hour. There was some evidence that speedometers are not accurate, and get out of order, and it is argued by the appellant that the officer's speedometer may have been out of order, and did not register the speed correctly; but that was a question for the jury. Speedometers, like other machines, may get out of order; but, where they are tested regularly, they may be relied upon with reasonable certainty to determine accurately the rate of speed at which a machine is driven. It cannot be said therefore that, because speedometers may be out of order, rates of speed may not be measured by instruments manufactured for that purpose, and which usually give approximately correct rates of speed."

In the case at bar, it was established by proof of high quality, that the device used fulfilled the function for which it was designed and was mechanically sufficient at the time it was used in connection with appellant's apprehension. We conclude that the conviction was sustained by sufficient evidence, and the judgment is, therefore, affirmed.