George C. Wildermuth, J.
The defendant is charged with a violation of Village Ordinance 2.1 (a) of the Village of Garden City, Nassau County, State of New York, in that he exceeded the speed limit of 30 miles per hour while operating his automobile on March 5, 1958 in a northerly direction on New Hyde Park Road, Garden City at a speed of 41 miles per hour. His speed was clocked by a device known as the Foto-Patrol.
The Foto-Patrol is a speed measuring device and operates on an electronic impulse principle which activates a strobe light and camera and when the setting of the machine is disturbed by a speed in excess of the setting, in this case 40 miles per hour, a light flashes and the camera then takes a photograph of the license plate number of the offender and provides through a code the alleged speed.
There is an official instruction manual prepared by the company which developed and manufactured the device. The set-up procedure of the Foto-Patrol is as follows:
There are two parallel tapes, 36 inches apart, which are cemented to the roadway across the lane of traffic and then connected to two boxes connected to a camera and strobe light set upon a stanchion on the sidewalk alongside the curb. The device can then be set at various speeds and in this particular instance was set at 40 miles an hour. When an automobile passes over these tapes at less than 40 miles an hour, nothing happens, but when passing at a speed in excess of 40 miles an hour, the light flashes and a photograph of the license plate is taken.
*977 On the day in question officers Johnson and Kuhn of the Garden City Police Department set up the Foto-Patrol device, cementing the two parallel tapes 36 inches apart, across the left lane of traffic in the northbound section of New Hyde Park Eoad, a short distance north of Stratford Avenue, in the Village of Garden City, for the purpose of apprehending speeders pro-" ceeding north on New Hyde Park Eoad. They testified that they had received instructions as to setting up this device and its use and had used it for a few days previous to the date in question. They also testified that in setting up this machine on the day in question they followed the instructions set forth in the instruction manual previously referred to word for word and checked it in the presence of a representative of the FotoPatrol device; that they then tested the device by officer Johnson driving police car No. 3 in a northerly direction across the tapes and locking his speedometer which registered 48 miles per hour; the Foto-Patrol photograph of the license plate of this police car was taken and was received in evidence, showing a similar speed of 48 miles per hour. This test was made prior to the time the defendant was apprehended and after he was apprehended another test was made by police car No. 2 in the same manner as I have previously described and the speed registered at 49 miles per hour, the same as the photograph taken at the time, Avhich was also received in evidence.
Alfred Barber, an engineer, having a bachelor of science degree in communications engineering, testified that he was a consulting engineer in communications equipment manufacturing since 1928 and Avas familiar Avith electronic devices used for recording speeds of motor vehicles and had been familiar Avith the Foto-Patrol device for approximately two years; that he inspected the Foto-Patrol device, which upon subsequent eAddence turned out to be the device in question, the evening before the date the defendant Avas apprehended. Mr. Barber then proceeded to describe in detail the operation of this device, stating that the operating principle was that of an electronic counter; a predetermined count is :set into the electronic counter and as a vehicle passes over the device, contact with the first tape starts a second count which measure the speed of the vehicle between the first tape and the second tape; in the event the speed is in excess of the predetermined count, which in this instance was 40 miles per hour, the strobe light and camera are activated and take a photograph of the license plate of the speeding vehicle. The actual speed of the vehicle is shoAvn in figures on the photograph and can be determined by adding *978 the figures and then referring to a prepared table or chart. In reply to a hypothetical question which included the se-t-up and test procedures followed by officers Johnson and Kuhn, Mr. Barber stated that he was of the opinion that the device was operating accurately at the time the defendant was apprehended. He also testified as to the exhibits showing the license plates of the automobiles in question, explaining the numbers and the table which determines the actual speed of the vehicle; he also stated that the device had originally been developed to measure the speed of gunfire. Mr. Barber stated that in his opinion, with reasonable certainty, the Foto-Patrol is an accurate machine for recording the speed of motor vehicles.
The People then called as a witness, Paul S. Martin, a patent attorney, who had been connected with the development of this Foto-Patrol device since its inception, for a period of approximately 10 years; he worked as an engineer in electronic laboratories; he helped develop this device and the theory underlying it and was familiar with the details of its construction and operation and that this was the only unit in existence at the time when the photographs of the license plates of the police cars and the defendant’s automobile were taken; he himself developed the film and had the enlargements made and identified the exhibits in evidence showing the license plate numbers. He then stated that he prepared the chart and did the calculations from it, using a definite formulae involving time, rate and distance, stating that a car traveling at a certain speed for a certain time will travel for a certain distance and then described the machine and its operation in some detail.
Lt. Edwin Hauser of the Garden City police force was called as a witness and testified that he was in charge of having the speedometers of the police vehicles checked, taking them to Oman Brothers who have a dynamometer for the purpose of testing speedometers; that not only do they test the speedometer of the Garden City police vehicles but they also check those of the police of Nassau County, Rockville Centre and the Park Commission. He then described the manner in which the tests were made and said that he personally witnessed the tests of police' cars No. 2 and No. 3, recording the tests on cards that he signed his own name to and that these records were made in the regular course of police business and filed in the Police Department files in the regular course of business. These speedometer test certificates were then received in evidence.
. The defendant denied that he was speeding, although he did admit that in going around a truck he may have gone as much *979 as 35 miles per hour hut only for a short distance in order to avoid what he thought might be a possible accident. Officers Kuhn and Johnson who have been in the Police Department for some time, after being qualified, testified to their opinion of the defendant’s speed. I am disregarding officer Johnson’s testimony, as he expressed some doubt as to whether his estimate of speed was independent of the Foto-Patrol; as to officer Kuhn, his testimony was without qualification that in his opinion the defendant’s speed was approximately 45 miles per hour, to which I have given consideration in deciding this case.
There is no reported case with reference to this Foto-Patrol device and it is for that reason that I have gone into such detail in my opinion.
"When radar was first introduced for the purpose of apprehending speeders expert testimony was required (People v. Offermann, 204 Misc. 769). This is no longer necessary (People v. Magri, 3 N Y 2d 562, 566).
It has been suggested by the defense that this set has never been used and there being no other decisions upholding its accuracy, the defendant should be acquitted. There has been and always will be a first time in everything. We have passed the horse and buggy days and are living in a new era. The Court of Appeals in People v. Magri (supra, p. 566) stated:
“X rays, electroencephalograms, electrocardiograms, speedometer readings, time by watches and clocks, identity by fingerprinting, and ballistic evidence, among a variety of kindred scientific methods, are freely accepted in our courts for their general reliability, without the necessity of offering expert testimony as to the scientific principles underlying them. The use of radar for speed detection may now be said to fall in this category.”
In this case, however, expert testimony, in my opinion, was essential and the People have presented such proof.
There has also been a suggestion that the speed was measured for only a distance of three feet and therefore should not be considered as sufficient evidence. The question is, did the defendant speed and was there sufficient proof offered to find him guilty beyond a reasonable doubt.
In view of all of the testimony, I am of the opinion that the Foto-Patrol device accurately recorded , the defendant’s speed at the time in question, which was further substantiated by the tests made by the police cars which had been calibrated and the opinion of officer Kuhn as to the defendant’s speed.
I find the defendant guilty beyond a reasonable doubt.