THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* EDMUND SARVER, Defendant.

City Court of New Rochelle, Sitting as Court of Special Sessions, March 31, 1954.

524

*Murray C. Fuerst, Corporation Counsel* (*John A. Bodmer* of counsel), for plaintiff.

*Frank J. Nardozzi* for defendant.

*Joseph E. Deady, amicus curiæ.*

KENNEDY, Acting City Judge. The defendant, Edmund Sarver, is charged with operating a motor truck along Wilmot Road in the city of New Rochelle at a rate of speed of thirty-six miles per hour on July 30, 1953, in violation of an ordinance

which fixes the maximum rate of speed at twenty-five miles an hour.

In support of the charge of violation of the ordinance made by a police officer of the City of New Rochelle, the city has offered a graph recording made on a radar-type device which purports to measure the speed of vehicles. This device is known as an electromatic speed meter and is manufactured by the automatic signal division of Eastern Industries, Inc., at Norwalk, Connecticut. The city offered evidence as to the manner in which the electromatic speed meter operated and as to its accuracy.

As an expert witness, Dr. John Kopper of the faculty of Johns Hopkins University was called by the city. The witness stated that he received a Doctor's degree in Electrical Engineering from Johns Hopkins University in 1944, that he practiced electrical engineering for over twenty years, and that he taught courses in electrical engineering at Johns Hopkins for twelve years. He stated the electromatic speed recorder was a radar-type of instrument which measured velocity by a radar method.

Simplifying the substance of his testimony, it may be said that the electromatic speed recorder operates in this manner: The police car from which the radar speed meter operates parks alongside of the road. A transmitter in the shape of a box is placed at the rear of the car or on the ground in back of the car facing the oncoming traffic. This transmitter sends out sound waves that strike the oncoming cars and return to a receiver which is part of the speed meter. By measuring the change in frequency in these sound waves as they return compared with their frequency when sent out, the device is able to record the speed of an approaching car. The "zone of influence" or the zone through which the speed of the car is measured extends for approximately 30 feet and is approximately 175 feet away from the speed meter device. In other words, when the approaching car reaches a point about 175 feet away from the transmitter, the sound waves returning after hitting the approaching car, are recorded on a graph and in this way record the speed of the approaching car as it passes through the "zone of influence" a distance of approximately 30 feet.

If the oncoming car had been stopped in the "zone of influence" there would be no change in the wave frequency between transmission and reception. However, there is always a change or frequency shift between transmission and reception when the oncoming car is moving.

The moving car coming into the stream of sound waves, makes the waves bounce back to the receiver, something in the manner in which an echo is produced. The change in their frequency indicates the rate of speed of the approaching automobile.

A permanent record of the speed is made on a graph by the electromatic speed meter.

The city called three police officers who were used in apprehending the defendant. Officer Thomas Rabbitt had charge of operating the electric speed meter itself. He holds the United States Government Radio Telephone Operator's License First Class, and was a chief radioman in the Navy, and studied electrical engineering for two years at New York University.

As the defendant's green truck went by the parked car in which Thomas Rabbitt was seated operating the electromatic speed meter, Rabbitt noticed the graph indicated excessive speed. He called and motioned to officer Bartnett seated in the same car that the defendant's green truck should be stopped. Officer Bartnett called by telephone to officer William Burkhardt who was in another police car a quarter of a mile ahead. Officer Burkhardt stopped the defendant's green truck and issued a summons to the defendant.

At the conclusion of the city's case and at the end of the trial, the defendant moved to dismiss the information on various grounds. In support of his contentions, defendant's counsel has submitted a brief which extensively covers the authorities on the points raised.

The argument that the wording of the ordinance in question requires the speed limit to be exceeded for a distance of one eighth of a mile before a conviction may be had was first made on a motion to dismiss the information prior to the trial. In deciding this motion the court ruled otherwise. The defendant's contentions in this respect have been disposed of in the court's opinion on the preliminary motion. No further comment is necessary here.

Defendant contends that officer Rabbitt, who directed the arrest, could not identify the defendant. The testimony showed that officer Rabbitt saw a green truck which approached and passed him at an excessive rate of speed as recorded on the speed meter's graph. This information was passed on to officer Burkhardt, who arrested the driver of the green truck, who is the defendant. The circumstances conclusively established the defendant's identity. No further identification is necessary.

Defendant's contention that the speed meter was inaccurate and unreliable is not sustained by the evidence. Dr. Kopper testified that the electromatic speed meter was accurate to within a possible variation of one or two miles per hour. In an extreme case a diathermy machine in the immediate vicinity of the speed meter could be responsible for an error of from three or four miles per hour.

The evidence shows that the meter was calibrated or tested on the morning of the day when the defendant was ticketed by the police officers using it. A police car was run past the radar car. The reading on the speedometer of this car was compared with the recording on the graph of the electromatic speed meter. The speed meter was found to be accurate when compared with the conventional speedometer in the police car. The electromatic speed meter had been acquired some six months before the day in question by the New Rochelle police department. It had been frequently tested during the six months' period and found to be accurate.

In this case the information charging the defendant with violation of the ordinance was sworn to by the arresting officer, officer Burkhardt. He testified that the defendant's car approached him at a speed of approximately thirty-five miles per hour, so that he could be said to have personal knowledge of the violation. If the city's evidence of speed was solely confined to the speed meter graph, it would seem that officer Rabbitt, who was operating the speed meter, would be the logical person to swear to the information.

The use of ordinary speedometers or other scientific devices for determining the speed of motor vehicles has long been accepted in this and other States. (*City of Spokane* v. *Knight,* 96 Wash. 403; *Commonwealth* v. *Buxton,* 205 Mass. 49; *Carrier* v. *Commonwealth,* 242 S. W. 633 [Ky.].)

Speaking of radar speed meter in *City of Rochester* v. *Torpey* (204 Misc. 1023, 1026), the Monroe County Court said: "The use of radar is comparatively new as a means of bringing about the arrest of violators of ordinances pertaining to the speed of automobiles and until such time as the courts recognize radar equipment as a method of accurately measuring the speed of automobiles in those cases in which The People rely solely upon the speed indicator of the radar equipment, it will be necessary to establish by expert testimony the accuracy of radar for the purpose of measuring speed."

In *People* v. *Offermann* (204 Misc. 769), an Erie County Special Term reversed a judgment of conviction because there was no competent evidence as to the accuracy and reliability of the radar speed meter. Such is not the case here. On the other hand, the City Court of Yonkers in *People* v. *Katz* (205 Misc. 522), recently found defendant guilty on evidence supplied by a radar or electromatic speed meter, holding the speed meter to be '' a scientifically reliable device which if properly operated and properly functioning falls in the category of recognized instruments used to determine the speed of moving vehicles.''

On the evidence before the court, it conclusively appears that the radar or electromatic speed meter is an accurate and reliable instrument for the measurement of velocity. It must take its place along with the ordinary mechanical speedometer as a device which accurately measures the speed of a moving vehicle. Over the years the courts have accepted the use of many scientific instruments and devices. Recently the use of a machine known as the '' drunkometer '' designed to measure the sobriety of those tested by it has been upheld by this court. (*People* v. *Spears,* 201 Misc. 666.) The radar speed meter is no different than any other scientific device. Admissibility of tests made by it depends entirely on its accuracy and reliability.

On all the evidence, the court is convinced that the device is sufficiently accurate to make admissible the recordings made by it.

Defendant's motions to dismiss are denied and the defendant is found guilty as charged.