L. O. HARDAWAY

*v.*

STATE OF TENNESSEE

*(Nashville,* December Term, 1956.)

Opinion filed May 3, 1957.

DAVID C. RUTHERFORD and JAMES W. RUTHERFORD, Nashville, for plaintiff.

NAT TIPTON, Advocate General, for the State.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

Mr. Hardaway was indicted for violating the speed limit on the morning of July 12, 1955, about half past eleven, as he was traveling north on the Gallatin Pike. He was convicted and fined $10. He has appealed and assigned two errors, (1) That the evidence preponderates against his guilt and in favor of his innocence, and (2) That the Court erred in admitting evidence of a radar device and computation therefrom which was the only evidence by which the officer fixed the speed of his car at the time.

It was shown by the arresting officer, a Tennessee

Highway Patrolman, that he was alone on this occasion and was in an automobile which was equipped with radar which consisted of a sort of box on the rear fender and inside the car the speed of another automobile was registered in two ways, (1) by a needle which indicated the speed, and (2) by a graph on which the machine registered with a tracing to show the speed of the car. The officer was not an expert in radar and did not understand what made it "tick" so to speak, but he followed instructions according to which he parked on the roadside parallel to the road and pointing in the direction from which the cars to be checked would be approaching the rear of his car. While sitting there he noticed the defendant's automobile approaching his rear at a "fast rate" of speed, so as it passed him he first looked at the needle on the dial and then checked the graph and they showed that the defendant was traveling at the rate of 43 miles an hour in a 30-mile speed zone. He immediately gave chase and caught up with the defendant when he stopped for a traffic signal and gave him a ticket for speeding. Admittedly, as the defendant approached the traffic signal he was within the 30-mile speed limit. The officer did not attempt to fix the speed of the car by anything other than the radar device.

It was shown by another officer that the radar device had been calibrated, that is tested, for accuracy both before and after the arrest. These tests showed that the machine was performing substantially accurately, although a small fraction under the exact speed. The arresting officer had also testified that he had been working with the radar about six months and he had never found it to be either over or under the correct speed.

The State called as a witness Dr. Kopper, an electronic expert of Johns Hopkins University and the author of a number of articles on the subject, one of which is exhibited to his testimony and appears in Vol. 33, page 343, of the University of North Carolina Law Review. This witness has testified also in a number of cases in other states involving questions of the use of radar in speeding cases.

He explained the theory upon which the radar apparatus operates; that it is accurate as a scientific fact and it portrays the speed of passing or moving objects with substantial accuracy; that any deviation in the operation of a machine caused by a lowering of the voltage in the battery on which the machine depends will cause it to register less than the actual speed so that any such accuracy is in favor of the motorist rather than against him; also he admitted that an increase in the voltage would have the opposite effect, but of course it is a matter of common knowledge that it would be a rare phenomenon for the battery of a modern automobile to grow stronger rather than to take the usual course of eventually growing weaker. He testified also that if the machine tested substantially correct both before and after the particular occasion, it would naturally be correct in the interim.

As to the qualifications of the operator of such machines he testified that the necessary information for the operation of same is not complicated and does not require very much training in order for the operator to use it in the determination of speed of a moving object. The officer here had had three hours training initially and six months experience in use of same.

There was exhibited also in the evidence the graph which was made on this occasion which contains all of the necessary data identifying the defendant, the time, the place, etc.

Under the first assignment of error defendant relies upon T.C.A. sec. 40-803, which in substance provides that an officer may arrest without a warrant for a public offense committed, or a breach of the peace threatened, in his presence. Also the statement in *McCanless v. Evans*, 177 Tenn. 86, 146 S.W.2d 354, 356, wherein it is said:

"Where an officer is apprised by any of his senses that a crime is being committed, it is being committed in his presence, so as to justify an arrest without warrant."

It is argued that the offense was not committed in the presence of the officer for the reason that the defendant's car had already passed when the officer observed the radar, and, therefore, it must follow that some other car or object was behind the patrol car that caused Officer Williams to see the radar register 43 miles an hour.

Counsel does not state the evidence correctly. Officer Williams testified that he saw the defendant's car coming as it approached the rear of his car and it is abundantly clear from his testimony that there was no other car on the scene at the time; in fact, Dr. Kopper in examining the graph testified to the same effect. It is a fact, however, that the officer depended on the radar reading to determine the exact speed of the car and not upon his own visual estimate from watching the car.

Therefore, the solution of this assignment must depend

upon the answer to be given to the second assignment, because if the radar evidence is admissible then the officer had as much right to rely upon it as he would have had to rely upon the speedometer in his automobile if he had been chasing the defendant's car and keeping abreast of him while he observed the action of the speedometer on his own car. We have universally accepted the speedometers on automobiles as being adequate to indicate the speed of a car and admissible in evidence, subject, of course, to countervailing proof as to the accuracy of same.

This brings us to the second assignment under which it is insisted (1) that the radar speedmeter is not an accurate device for checking speed, and (2) that the arresting officer in this case did not know how to operate the radar equipment and make proper measurements.

■ ■ We are of opinion that the testimony of Dr. Kopper shows that the radar speedmeter is an accurate device for checking speed when the same is tested for accuracy from time to time, and when it is properly operated. Also, we think that the proof shows that the arresting officer was qualified to operate this machine. Counsel for defendant indulged in considerable cross-examination of both the arresting officer and Dr. Kopper, much of which consisted of suppositive questions. The frankness of each witness in giving his testimony and, therefore, being unable to answer certain questions does not detract from the value of same with reference to the material and controlling considerations in this case.

Any question of the admissibility of this radar evidence is fully covered in the leading case in this country of *State v. Dantonio*, 18 N.J. 570, 115 A.2d 35, 49 A.L.R.

2d 460. That case is a complete brief on the question of the use of radar in speeding cases which cites all of the reported cases and a number of articles in some of the leading Law Reviews. One of these articles is in 33 N.C. Law Review, 355, by Professor Herbert R. Baer. Beginning on page 370, the author abstracts all of the cases cited in the brief of appellant. The first one is *State v. Moffitt,* 1953, 9 Terry 210, 48 Del. 210, 100 A.2d 778. The only difference between the proof in that case and in this is that there were two highway troopers operating the radar speedmeter instead of one. The defendant objected first, that such speedmeter had never been recognized as a reliable instrument to record the speed of vehicles on the highway, and second, that even if evidence of speed obtained through the use of a meter were admitted, it should not be held, standing alone, to be conclusive evidence of the defendant's speed. The Trial Judge overruled both objections and charged the jury that the evidence as to the accuracy of the speedmeter was admissible subject to the jury's determination as to its accuracy under all the circumstances of the case. Also, the fact that these tests were made by a person not skilled in electronics was not of sufficient import to render the evidence inadmissible and concluded with the statement that the speedmeter falls in the category of recognized instruments used to determine the speed of a moving vehicle, such as a speedometer.

Professor Baer then summarized the Moffitt case along with the Katz (People on Inf. of *Laibowitz v. Katz,* Sp. Sess. 129 N.Y.S.2d 8), Sarver (*People v. Sarver,* 205 Misc. 523, 129 N.Y.S.2d 9), Dantonio (supra), Offermann (*People v. Offermann,* 204 Misc. 769, 125 N.Y.S.2d 179),

Beck (*People of City of Buffalo v. Beck,* Sup., 130 N.Y.S. 2d 354) and Torpey (*People of City of Rochester v. Torpey,* 204 Misc. 1023, 128 N.Y.S.2d 864) cases as follows:

"Reviewing the above cases on the radar speedometer we find that in all seven of them the evidence of speed as shown by the speedmeter was admitted in the Trial Court. An expert in electronics familiar with the theory and operation of the radar speedmeter testified in four of the cases (the first four named above). In the two New York State Superior appellate cases (the 5th and 6th cases above) which reversed the Trial Court, no such expert had testified. In the one New York case (Torpey) in which a conviction was sustained by an inferior appellate Court, and in which no expert had testified, the Court based its affirmance on the fact that there was other evidence of speed in the case, but admonished that if the radar evidence was the sole evidence of speed, there would be a reversal. From a consideration of all the opinions it is clear that the linchpin in the prosecution's case *at the time of these decisions* was expert testimony as to the construction, theory, operation and accuracy of radar speedmeter. Without the aid of expert evidence certain of the Courts would not recognize the said speedmeter as an instrument that accurately registers the velocity of a moving vehicle. But it is apparent from the decisions of these Courts that had such expert evidence been introduced, the evidence of the defendant's speed as shown by the speedmeter would have been admitted. Thus the radar speedmeter has already surpassed the lie detector in judicial recognition. It is equally appa-

rent that even those overly cautious judges in their decisions found that expert testimony was a prerequisite to the admission of the speedmeter's readings did not mean to imply that such testimony would always be essential. Thus, Justice Ward, in the Beck case stated that radar speedmeter was not 'a proper subject for judicial notice *at this time.*' '' (Parentheses ours.)

The author then predicts that some day the Courts will dispense with the necessity of requiring an expert in electronics to testify in each case as to the construction, theory, operation and accuracy of radar speedmeter in each case and will take judicial notice of same but that in the meantime prosecutors, in order to cinch a conviction, should call such an expert in each case, unless in the meantime the Legislature shall dispense with the necessity of same, as has already been done in the State of Virginia and some others.

The Dantonio case, supra, has already held that it will take judicial notice of the accuracy of the radar speedmeter. In the instant case the question of judicial notice is not before us because Dr. Kopper has testified as an expert as to the accuracy of this instrument. Hence, any ruling by this Court would be dictum. We are sympathetic to the idea, however, and suggest that the question might be settled by a legislative act in this State.

Counsel have not referred to our recent case of *Fortune v. State,* 197 Tenn. 691, 277 S.W.2d 381, which involved the drunkometer test. That case differs from the instant one in two respects, (1) no expert testified, and (2) the correct operation of the instrument depends upon the proper mixture of the component chemicals from

time to time by the agency using same, whereas the radar speedmeter is assembled by the manufacturer and delivered as a completed instrument into the hands of the operator, whose instructions are comparable to such as would be given to a novice for the operation of a modern camera; with the further fact that any defect in performance of the instrument will in all reasonable probability favor the defendant.

■ We do not wish to be understood as holding such radar evidence to be conclusive; it is to be simply admissible but rebuttable and subject to cross-examination as any other evidence, leaving to the triers of fact the determination of the weight to be given same in view of all the other evidence.

All assignments are, accordingly, overruled and the judgment below is affirmed with costs.