## PEOPLE *v.* KENNEY.

1. WORDS AND PHRASES—SPEEDWATCH.

   A speedwatch is a mechanical device by means of which speed of motor vehicles is reliably determined within a mile or two per hour.

2. EVIDENCE—SPEED—MECHANICAL DEVICES.

   It is not necessary that a court find that a mechanical device for the measurement of speed of vehicles could not err in order to admit its findings as evidence to be weighed by the trier of the facts along with all other evidence to determine the guilt. or innocence of the party.

3. CRIMINAL LAW—DRIVING AT EXCESSIVE SPEED—SPEEDWATCH—EVIDENCE.

   Evidence of reading of speedwatch was properly admitted in prosecution of city bus driver for driving his vehicle at an excessive speed, where it appears the instrument was properly set up, was checked by the officers before operating it, was periodically checked by experts to determine whether or not it was operating correctly, the operating officer observed the speed

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 5A Am Jur, Automobiles and Highway Traffic § 1254.
    Proof, by means of radar or photographic devices, of violation of speed regulations.   49 ALR2d 469.
[4] 5A Am Jur, Automobiles and Highway Traffic § 1253.

of the defendant's vehicle and testified as to his estimate of the speed and all rights of the defendant were protected; defendant's claim that he was unable to cross-examine the speedwatch being without merit.

4. SAME—DRIVING AT EXCESSIVE SPEED—SPEEDWATCH—EVIDENCE.
   Finding of guilt of driving city bus in excess of permitted speed
   *held*, justified by evidence adduced, including evidence of reading of speedwatch.

Appeal from the Recorder's Court for the City of Detroit, Traffic and Ordinance Division; Watts (John D.), J. Submitted June 12, 1958. (Docket No. 49, Calendar No. 46,905.) Decided October 13, 1958.

Henry C. Kenney was convicted of driving a motor vehicle at excessive illegal speed. Affirmed.

*Nathaniel H. Goldstick*, Corporation Counsel, and *Lawrence E. Eaton*, Assistant Corporation Counsel, for plaintiff.

*Clarence A. Reid* (*Clarence A. Reid, Jr.*, of counsel), for defendant.

KAVANAGH, J. Detroit policemen operating a "speedwatch" issued a traffic ticket to defendant charging him with speeding 40 miles an hour in a 30-mile zone on February 14, 1956.

The speed of the defendant's motor vehicle was determined by the use of a speedwatch. It is to be noted that the defendant is a driver of a Detroit department of street railways bus. and the arresting officers were connected with the Detroit police department. No evidence was offered on behalf of the defendant with reference to the accuracy of the speedwatch. Very little cross-examination was carried on by defendant's attorney. This is mentioned

to indicate that the factual situation might be different in a contested case.

Defendant's counsel made a motion to suppress the evidence obtained from the speedwatch for the following reasons: (1) that an unlawful arrest was made, since the charge is a misdemeanor, and no offense was committed in the presence of the arresting officer; (2) that there is no Michigan statute authorizing the use of evidence obtained from a speedwatch; (3) that the speedwatch is not scientifically or mechanically reliable and, therefore, should fall within the same category as the lie detector and drunkometer.

A speedwatch is a mechanical device by means of which speed is determined. Two rubber tubes are placed on the road 132 feet apart. These road tubes are hollow in the center, and are attached at the end upon the curb to a mercury switch. The slightest impulse by a car hitting one of these road tubes will create an impulse of air that will come into this little mercury switch, and tip the mercury tube, thus making an electrical contact between the 2 electrodes, which will complete a circuit from that tube clear back to the speedwatch.

The speedwatch, itself, is set anywhere from 50 to 600 feet beyond the tubes. There is a separate circuit through each tube and back to the speedwatch. In the control box there is a toggle switch. An officer observing a car approaching the first tube throws the toggle switch, and when the front wheels of a car hit the tube, that completes a circuit, which energizes a solenoid which, in turn, brings a lever down to start the watch. Then, as the officer observes a car approaching the second road tube, he throws the switch to the second tube position, which again, when the front wheels hit that tube, creates a circuit through to the control box which stops the watch. The elapsed time is mechanically computed

by the speedwatch and the average speed for the 132 feet is recorded. The reading remains on the watch until removed by the officer.

The 2 officers testified that they had been working with the speedwatch for some 6 months, and that previously they had training in its use. They further testified that on the 14th day of February, 1956, they took the speedwatch equipment and set it up for the day, checked the cord for distance, making the road tubes 132 feet apart, nailed the hose down so that it could not be moved, connected it with the machine, returned to the car, and placed the machine in operation. Before timing any vehicles one individual operated the speedwatch in order to check it for accuracy and the partner drove the police car over the tubes at 30 miles per hour. The speedwatch registered a speed of 30 miles per hour.

Officer Moore testified that he observed the defendant for approximately 100 to 200 feet and estimated the speed of the vehicle as being over the speed limit of the street; that he then placed the speedwatch in operation, and the clock registered 41 miles per hour. He stopped the defendant and gave him a ticket for driving 40 miles per hour in a 30-mile per hour zone.

The prosecution offered the testimony of Albert Blume, a watchmaker and jeweler who had been in that business for upwards of 40 years, who testified that he was employed to check the Detroit police department speedwatches, and that he checked the one in question on January 17, 1956, February 17, 1956, and again on March 17, 1956, and that on each date the watch was accurate. He further testified that it would be impossible for the watch to be inaccurate unless it were damaged, and that there was no question in his mind as to the accuracy of the watch.

The prosecution further introduced the testimony of the manufacturer of the speedwatch. He testified that in the event anything went wrong with the watch no significant reading whatsoever would be recorded.

The trial judge denied the motion to suppress and permitted the introduction of the evidence from the speedwatch.

Although there have been no decisions of this Court there have been several decisions in courts of other States which have dealt comprehensively with the evidential problems presented by the use of mechanical devices for the measurement of speeds of vehicles. See *State* v. *Dantonio,* 18 NJ 570 (115 A2d 35, 49 ALR2d 460); *State* v. *Moffitt,* 9 Terry (Del Super) 210 (100 A2d 778); *People* v. *Offermann,* 204 Misc 769 (125 NYS2d 179); *People of City of Rochester* v. *Torpey,* 204 Misc 1023 (128 NYS2d 864); *People* v. *Katz,* 205 Misc 522 (129 NYS2d 8); *People* v. *Sarver,* 205 Misc 523 (129 NYS2d 9); *People of City of Buffalo* v. *Beck,* 205 Misc 757 (130 NYS2d 354); *Carrier* v. *Commonwealth* (Ky), 242 SW2d 633. · Particularly since World War II members of the public have become generally aware of the use of speed-radar methods indicating the presence of such watches and their distance and speed. ·The particular method used in the operation of the speedwatch apparently is not as complicated as radar methods, and· because of its simplicity has been adopted by numerous law-enforcement bodies. The writings on the subject assert that when properly operated the speedwatch accurately records the speed of a motor vehicle, at least reliably so, within a mile or two per hour.

The testimony in this case seems to indicate that the method of operation is simple and accurate. All of the testimony seems to point to the fact that checks were made on this particular speedwatch by an expert at least 3 times in 60 days, and each time

it was found to be working accurately, including a check 3 days after the ticket was issued. No testimony was introduced on behalf of defendant in support of his motion to indicate that the instrument was mechanically and scientifically inaccurate.

It is not necessary that the court find that the instrument could not err in order to admit its findings as evidence. It is not contended that the readings were conclusive, but that they merely constituted admissible evidence to be weighed by the trier of the facts along with all other evidence to determine the guilt or innocence of the party.

The situation in this case is unlike that of *People v. Morse,* 325 Mich 270, in which there was testimony that the "Harger Drunkometer" had received general acceptance by the medical profession and general scientific recognition in establishing the alcoholic content of a subject's blood and thus the extent of his intoxication. There was also testimony in the *Morse Case* of 5 doctors that most of the medical profession do not regard the instrument as being reliable. The same situation was true in *People v. Becker,* 300 Mich 562 (139 ALR 1171), in regard to the polygraph.

It would seem that where, as in this case, it was shown by testimony that the instrument was properly set up, was checked before using by the officers operating it, where it was shown that constant periodical checks were made by experts to determine whether or not the instrument was operating correctly, and where the officer operating the instrument observed the speeding vehicle and testified as to his estimation of the vehicle's speed, that all of the rights of the defendant were protected, and that under these circumstances the court properly admitted the evidence.

The other contention by the defendant that he was unable to cross-examine the speedwatch does not appear to have any merit.

The same situation would prevail with respect to the speedometer of a motor vehicle or motorcycle which is duly accepted as evidence in traffic cases.

Under the proofs in this case showing constant checking of the machine by experts, testimony of expert operators, and testimony of observation of the arresting officer of the speed of the bus, defendant appellant's motion to dismiss the complaint and suppress the evidence was properly denied. The admission of the evidence was not reversible error. The finding of guilt was justified by the evidence.

Affirmed.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and VOELKER, JJ., concurred.