Bell, J.
The trial court found as a matter of fact that the neighborhood where the violation occurred was a congested one, and that 42 miles an hour was an unreasonable speed. It found also that the signs erected as a warning that a speed meter was being operated were in compliance with Section 4511.091, Revised Code.
We are satisfied that the court was justified in those findings.
We are left, then, with the sole question of whether the evidence of speed is sufficient to warrant the conviction. The question may be stated thus: May a defendant be convicted of
speeding solely upon evidence obtained from a radar speed meter, in the absence of expert testimony with respect to the construction of the meter and its method of operation?
Radar devices, as they are used today, are of two general types. That which is used by the military, commonly known as *300 the “pulsé” type radar, operates by sending forth at regular intervals a beam of radio microwaves which, when they come in contact with the object to be detected, are reflected or bounced back to the receiver. The waves move in both directions at the speed of light. Thus, by computing the time interval between sending and receiving, the distance of the detected object may be determined, and, by computing distance changes over two or more time intervals, the speed of movement of the object can be learned.
The radar speed-detecting devices commonly used in traffic control operate on what is known as the Doppler effect and utilize a continuous beam of microwaves sent out at a fixed frequency. The operation depends upon the physical law that when such waves are intercepted by a moving object the frequency changes in such a ratio to the speed of the intercepted object that, by measuring the change of frequency, the speed may be determined. See The Scientific Reliability of Radar Speedmeters, by Dr. John M. Kopper, 33 North Carolina Law Review, 343.
The Doppler effect, which has been used for over a century in determining the speed of stars and for over a decade in measuring the speed of airplanes and their height above the ground, has been experienced by probably every motorist when driving past a car whose horn is being sounded. The pitch or frequency of the sound falls suddenly just as the vehicle is passed.
In operation, the radar device, which, according to 1 Under-hill’s Criminal Evidence (5 Ed.), 280, Section 154, is now used in 43 states, the District of Columbia and Hawaii, is set up along the side of a road or street, usually in or upon a parked police car, with the beam being played along the highway. When a moving vehicle crosses that beam, the speed of the vehicle is registered on a graph or calibrated dial on the meter device. The speed, if it is excessive, is then transmitted by radio by the officer reading the graph or dial, along with a description of the vehicle, to another officer stationed some distance farther on, and the vehicle is intercepted by this officer.
That is the procedure which resulted in the arrest in this case and which presents the question presented by this appeal.
*301 Professor Wigmore, in The Science of Judicial Proof, at page 450, said:
“ * * * since the additions made possible to our unaided senses are due to the use of instruments constructed on knowledge of scientific laws, it is plain that the correctness of the data thus obtainable must depend upon the correctness of the instrument in construction and the ability of the technical witness to use it. Hence, the following three fundamental propositions apply to testimony based on the use of all such instruments :
“A. The type of apparatus purporting to be constructed on scientific principles must be accepted as dependable for the proposed purpose by the profession concerned in that branch of science or its related art. This can be evidenced by qualified expert testimony; or, if notorious, it will be judicially noticed by the judge without evidence.
“B. The particular apparatus used by the witness must be one constructed according to an accepted type and must be in good condition for accurate work. This may be evidenced by a qualified expert.
“C. The witness using the appartus as the source of his testimony must be one qualified for its use by training and experience.”
Does the evidence in this case comply with these fundamental principles ?
Although the question is one of first impression in Ohio, there is no lack of authority in other jurisdictions.
As might be expected, in the earlier cases - there was required the production of expert testimony on the electronics principles involved in radar speed detection. Thus, convictions based on radar meter readings were reversed in the absence of such expert testimony, on the theory that the operation of the device was not a practicable application of scientific facts that are generally known or ought to be known. See People v. Offermann, 204 Misc., 769, 125 N. Y. Supp. (2d), 179; City of Buffalo v. Beck, 205 Misc., 757, 130 N. Y. Supp. (2d), 354; City of Rochester v. Torpey, 204 Misc., 1023, 128 N. Y. Supp. (2d), 864 (judgment affirmed on basis of other evidence than radar).
On the other hand, convictions were affirmed where the *302 requisite expert testimony was advanced. See State v. Moffitt, 48 Del., 210, 100 A. (2d), 778; People v. Katz, 205 Misc., 522, 129 N. Y. Supp. (2d), 8; People v. Sarver, 205 Misc., 523, 129 N. Y. Supp. (2d), 9.
There would appear to be developing a realization upon the part of courts that such expert testimony is no longer required. And the first case to so indicate is State v. Dantonio, 18 N. J., 570, 115 A. (2d), 35, 49 A. L. R. (2d), 460. In that case, the court said:
“* * * under the circumstances it would seem that evidence of radar speed meter readings should be received in evidence upon a showing that the speed meter was properly set up and tested by the police officers without any need for independent expert testimony by electrical engineers as to its general nature and trustworthiness.”
The New Jersey court, quoting from Woodbridge, Badar in the Courts, 40 Virginia Law Beview, 809, continued:
“Under the Uniform Buies of Evidence, already approved by the American Bar Association at its 1953 meeting, judicial notice 'shall be taken without request by a party * * * of such specific facts and propositions of generalized knowledge as are so universally known that they cannot reasonably be the subject of dispute. ’ Badar speed meters are now in this category. Why should the time of experts be wasted and the expenses of litigation be increased by compelling such men to appear in court after court telling the same truths over and over? While it is agreed that every reasonable doubt about the accuracy of new developments should promptly be resolved against them in the absence of expert evidence, there is no longer any such doubt concerning radar. Bather, the applicable maxim should now be, ‘What the world generally knows a court of justice may be assumed to know.’ ”
That conclusion has been reached by other courts of last resort in the United States. The courts of New York, which have been reluctant to eliminate the necessity for expert testimony, as indicated by the citations above, have, as of January 16,1958, concluded the principle for that state. In the case of People v. Magri, 3 N. Y. (2d), 562, 147 N. E. (2d), 728, the Court of Appeal said:
*303 “We think the time has come when we may recognize the general reliability of the radar speed meter as a device for measuring the speed of a moving vehicle, and that it will no longer be necessary to require expert testimony in each case as to the nature, function or scientific principles underlying it. ’ ’
Although the case of Dooley v. Commonwealth, 198 Va., 32, 92 S. E. (2d), 348, may be distinguished on the basis of a statute (Section 46.215.2, Virginia Code) which makes the results of a radio microwave cheek prima facie evidence of speed, the Supreme Court of Appeals of Virginia made the following pertinent statement:
“For many years the public has become generally aware of the widespread use of radio microwaves or other electrical devices in detecting the speed of motor vehicles or other moving objects; and while the intricacies■ of such devices may not be fully understood their general accuracy and effectiveness are not seriously questioned,”
We are in accord with the trend of the most recent decisions that readings of a radar speed meter may be accepted in evidence, just as we accept photographs, X rays, electroencephalographs, speedometer readings, and the like, without the necessity of offering expert testimony as to the scientific principles underlying them.
There remains, then, only a determination as to the sufficiency of the evidence concerning the accuracy of the particular speed meter involved in the instant case and the qualifications of the person using it.
The uncontroverted evidence introduced through the testimony of the city electrician is that the meter had been checked by the electrician on the morning of the violation; that it had been calibrated by injecting into it known frequencies checked against those transmitted by the United States Bureau of Standards radio station; that it was checked, after installation in the police car, in its actual operation by driving a police car through the beam and comparing the meter-registered speed with actual speedometer readings; and that the meter was found to be working properly in all respects.
As has been indicated, the officer in charge of the radar car is merely required to read the dial on the meter in the same way *304 that a speedometer is read. A police officer with five years of experience is certainly qualified to do that.
We are of the opinion that the fundamental principles applicable to the use of scientific instruments, as outlined above, have been complied with in this case, and that the judgment of the Court of Appeals must be affirmed.
An equally interesting question is raised by the normal method of arrest under the radar speed meter procedure in the light of Section 2935.03, Revised Code, which authorizes a police officer to make an arrest without a warrant of a person found violating a law of this state, inasmuch as the officer in the police car ahead, who apprehends the driver, relies only upon information radioed to him by the officer in the radar car. However, that question has not been presented to us in this case.
It is interesting to note, however, that the state of Virginia, by statute (Section 46.215.2, Virginia Code), makes special provision for the validity of such arrests.

Judgment affirmed.

Weygandt, C. J., Zimmerman, Stewart, Taet, Matthias and Herbert, JJ., concur.