## Commonwealth v. Gideon

*Daniel E. Teeter*, for plaintiff.

*Oscar F. Spicer*, for defendant.

SHEELY, P. J., March 30, 1962.—Defendant was charged by a member of the Pennsylvania State Police with operating a motor vehicle on Route 15, a State highway in Latimore Township, Adams County, Pennsylvania, at a speed of 60 miles per hour in a zone where speed was restricted to 50 miles per hour, in violation of section 1002(b) of The Vehicle Code of April 29, 1959, P. L. 58, 75 PS §1002. Her rate of speed was timed by officers of the Pennsylvania State Police through the use of radiomicrowaves, commonly referred to as electronic speedometers or radar. The radar equipment was of a type approved by the Secre-

tary of Revenue and had been calibrated and tested for accuracy and found accurate within a period of 30 days prior to the alleged violation. Official warning signs had been erected on the highway by the proper authority indicating that radar was in operation.

The highway at that point is a four-lane highway, each lane being 12 feet wide, with a medial strip of 12 feet to 15 feet between the northbound and the southbound lanes. The unmarked radar car was parked four or five feet off of the southbound lanes, facing south. The radar screen was attached to the left front door glass approximately five feet from the ground and was aimed to the north in such position that it would pick up vehicles proceeding southwardly approximately 300 feet to the north of the radar car, but eliminating the northbound lanes of traffic entirely. Southbound vehicles would remain in the radar beam until they reached the radar car. After the radar equipment was in place, the operators tested it by having one of the interceptor cars with a tested speedometer proceed southwardly past the equipment at a speed of 50 miles per hour. The radar screen registered 49 miles per hour. They also tested it with a tuning fork tuned to 50 miles per hour and one tuned to 60 miles per hour. In each instance, the radar screen registered the exact speed. When defendant's vehicle went through the radar beam the equipment registered 60 miles per hour for the entire 300 feet.

Defendant testified that in her opinion she was not exceeding the speed limit of 50 miles per hour and that at the time she passed the radar car, and also when she was stopped at the interceptor car, there was another vehicle to her left in the act of overtaking her. The testimony of the officers indicated that when two vehicles are in the radar screen at the same time the radar will record the speed of the faster vehicle. According to the three officers of the radar team who tes-

tified, there was no other vehicle within the range of the radar screen at the time defendent's speed was timed. We accept the testimony of the officers.

Defendant contends that the amendment of April 28, 1961, to section 1002 of The Vehicle Code does not change the requirement of subsection (d) (1) that the rate of speed be timed for a distance of not less than a quarter of a mile by a peace officer using a motor vehicle equipped with a speedometer tested for accuracy within a period of 30 days prior to the alleged violation. It is argued that the amendment, subsection (d.1) (1), does not state any requirement of distance or time for the radar measurement of the rate of speed and that, therefore, distance must be determined from the subsection of which the amendment is a part, and that since the subsection states a requirement of timing speed by speedometers for a quarter of a mile this requirement also applies to timing speed by radar.

This is a non sequitur. Subsection (d) (1) of section 1002 provides two methods by which speed may be timed. Where the rate of speed of a vehicle is timed within a business or residence district, the time may be taken by not less than two peace officers, one of whom shall have been stationed at each end of a measured stretch of not less than one-eighth of a mile or, under any conditions, the rate of speed may be timed for a distance of not less than a quarter of a mile by a peace officer using a motor vehicle equipped with a speedometer tested for accuracy within a period of 30 days prior to the alleged violation. The amendment of April 28, 1961, amends section 1002 by adding, after subsection (d), a new subsection, (d.1) (1), providing that the rate of speed of any vehicle may be timed by radar. Section 1002, therefore, now provides three methods by which the rate of speed of a vehicle may be timed: (1) Within a business or resi-

dence district by two peace officers one of whom is stationed at each end of a measured stretch of not less than one-eighth of a mile; (2) under any conditions, by a peace officer using a motor vehicle equipped with a tested speedometer for a distance of not less than one-quarter of a mile; and (3) under any conditions, by officers of the Pennsylvania State Police through the use of radar. Even these methods are not required where a violation of section 1002(b)(1)(2)-(3), and possibly (a), is charged: Commonwealth v. Kenny, 178 Pa. Superior Ct. 479, 481 (1955).

Since the radar equipment makes an instantaneous measurement of the rate of speed of a vehicle, no distance is specified therefor. Had the legislature intended otherwise, it would have so provided as it did in the other part of subsection (d). To require the measurement of the rate of speed by radar to be for a distance of a quarter of a mile would render the amendment, subsection (d.1)(1), useless and inoperative. In section 52 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §552, it is provided that the presumption in ascertaining legislative intent is (1) that the legislature does not intend a result that is absurd, impossible of execution, or unreasonable. See Commonwealth v. Bartley, no. C1692 of 1961, County Court of Allegheny County.

Defendant next contends that the amendment, subsection (d.1)(1), to section 1002 of The Vehicle Code violates the due process clause of the Federal Constitution by placing an unconscionable burden on defendant in that the use of radar allows an instantaneous timing for speed for fractions of a second and makes its impossible for a defendant to disprove the charge of speeding. (This statement is not quite factually correct. In the present case, the speed was timed while defendant travelled 300 feet which, at a speed of 60 miles per hour, would have required 3⅓ seconds.)

This argument is based on the contention that electronic devices are subject to error and may be affected by various factors such as weather conditions, X-ray machines, welding apparatus, the presence of iron ore, or any large moving objects, and that a motorist apprehended for speeding by the use of radar could not be expected to know of the presence of any of the myriad factors that might affect the radar reading.

There are several answers to this contention. First, defendant offered no evidence to show that radar generally, or the equipment used in this case, was not accurate. The quotations in her brief from the Legislative Journal are unsupported arguments made in the legislature when this amendment was being considered and are not evidence. In spite of these arguments, a majority of both houses of the legislature passed the amendment and it was approved by the Governor. On the other side, the Commonwealth called an expert witness who was familiar with the particular equipment used in this case and testified as to its accuracy. Second, there was no showing that there were any factors in the vicinity of the equipment which might have affected its operation. On the contrary, the officer in charge of the equipment testified specifically that there were no X-ray machines or power stations in the vicinity and that there was no other traffic moving at the time. In any event, it is inconceivable that any factor which might affect the accuracy of the radar equipment could be operating without the knowledge of the officers using the equipment. The radar screen begins to register the moment a vehicle comes within the beam and ceases to register the moment it leaves the beam. For an outside factor to affect the reading without the officer's knowledge would require that it start to operate precisely when the vehicle entered the beam and ceased to operate precisely when the vehicle left the beam.

Radar has been adopted in a number of States, including Ohio, Maryland, Virginia, Florida, Maine and Oregon, as a means of measuring the rate of speed of vehicles on the highway and none of the statutes specify a distance over which the speed must be timed. Even without a statute authorizing the use of radar speeding convictions based on the use of radar have been upheld in State v. Moffitt (Del. Super.), 100 A. 2d 778; Peterson v. State, 163 Neb. 669, 80 N. W. 2d 688; State v. Graham, 322 S. W. 2d 188 (Mo. App.); Hardaway v. State, 202 Tenn. 94, 302 S. W. 2d 351; Everight v. City of Little Rock, 230 Ark. 695, 326 S. W. 2d 796; State v. Ryan, 48 Wash. 2d 304, 293 P. 2d 399. In many of these cases, it was held that the court could take judicial notice of the accuracy of radar. See also Demarest License, 5 D. & C. 2d 197 (1955). We have not been referred to a single case in which the use of radar as a means of measuring speed has been held to be unconstitutional.

In Dooley v. Commonwealth, 198 Va. 32, 92 S. E. 2d 348 (1956) (Appeal to Supreme Court of the United States dismissed: 354 U. S. 915; 77 S. Ct. 1377; 1 L. Ed. 2d 1432), defendant contended that the Virginia Code providing for the measurement of the speed of a vehicle by radar violated the fourteenth amendment to the Constitution of the United States, the due process clause. The court held that:

"The general rule is that the test of the constitutionality of statutes making proof of a certain fact prima facie or presumptive evidence of another fact is whether there is a natural and rational evidentiary relation between the fact proven and the fact presumed. Where such evidentiary relation exists and where the presumption is found to be both reasonable and rebuttable it does not violate the due process amendment. . .

"That there is a natural and rational evidentiary relation existing between the results of a speed checked by radiomicrowaves and the speed of the motor vehicle checked by them can hardly be denied . . .

". . . defendant contents himself by citing technical data in argument which tends to cast doubt upon the accuracy of radar devices. He recounts many conditions and happenings which allegedly affect the correct reading of radar under given circumstances, and argues that in this light the prima facie presumption created by the statute is irrebuttable.

". . . It will be observed that no attempt was made to show that the radar equipment, which had been tested for accuracy just prior to the defendant's arrest, did not properly record the speed. The examples cited by the defendant in his argument in an effort to show that the equipment might have been 'thrown off' and may have improperly recorded his speed, show beyond peradventure that if such occurred he could have introduced evidence to rebut the prima facie presumption created by the statute."

The court held that the statute did not violate the fourteenth amendment to the Constitution of the United States and that it was in all respects a valid enactment. What is quoted herein is particularly applicable to this case.

Radar is comparatively new, but that is no reason to reject its use as a means of measuring speed of vehicles. The law adapts itself to the advancements of science and makes use of new scientific discoveries. In Commonwealth v. Roller, 100 Pa. Superior Ct. 125, 128 (1930), a case involving the use of a talking motion picture recording of a confession, the court said:

". . . From time to time the courts have recognized new agencies for presenting evidential matters. The novelty of the talking motion picture is no reason for

rejecting it if its accuracy and reliability, as aids in the determination of the truth, are established. In the words of the learned trial judge, 'all knowledge purveys to the law, and from the domains of every art and science it draws the weapons by which it discovers truth and confounds error. The still photograph, X-ray, the dictograph, the finger print, the phonograph, the microscope, and even the bloodhound, have all been used and received by judicial tribunals in the proof of matters depending upon evidence; and, in all such cases, the preliminary investigation was directed to the proper authentication of the evidence, and not merely to the question whether imposture might be successful.' "

After citing a number of cases, the court continued:

"These are but a few of the cases which indicate the receptive attitude of the law toward any reliable mechanism produced by scientific knowledge for the discovery or recording of facts."

To the list of scientific discoveries which have been accepted by the court may now be added the use of radar.

And now, March 30, 1962, the judgment of the court is that defendant is guilty of violating section 1002 (b) of The Vehicle Code, and she is directed to appear in court on April 9, 1962, unless a fine of $10 for the use of Latimore Township and the cost of this proceeding is paid prior to that date.