IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

OCTOBER 1997 SESSION



**FILED**

**March 10, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

STATE OF TENNESSEE, )
)
APPELLANT, )
) No. 01-C-01-9611-CR-00487
)
) Davidson County
v. )
) Thomas H. Shriver, Judge
)
) (Interlocutory Appeal)
TRACY PITTS, )
)
APPELLEE. )


FOR THE APPELLANT:

John Knox Walkup
Attorney General & Reporter
425 Fifth Avenue, North
Nashville, TN 27243-0493

Lisa A. Naylor
Assistant Attorney General
425 Fifth Avenue, North
Nashville, TN  37243-0493

Victor S. Johnson, III
District Attorney General
Washington Square, Suite 500
222 Second Avenue, North
Nashville, TN 37201-1649

John C. Zimmerman
District Attorney General
Washington Square, Suite 500
222 Second Avenue, North
Nashville, TN 37201-1649

FOR THE APPELLEE:

C. Edward Fowlkes
Attorney at Law
172 Second Avenue, North, Suite 214
Nashville, TN  37201-1908


OPINION FILED:_____


REVERSED AND REMANDED FOR A NEW SUPPRESSION HEARING


Joe B. Jones, Presiding Judge

# O P I N I O N

This court granted the State of Tennessee's (state) application for permission to appeal to determine the propriety of the trial court's suppression of cocaine discovered during the search of a motor vehicle which was stopped for a traffic violation. The state contends the stop and subsequent search pass constitutional muster because (a) the officers had probable cause to believe Tracy Pitts (defendant) committed a traffic violation and (b) the search of the vehicle was incident to an arrest. After a thorough review of the record, the briefs submitted by the parties, and the law governing the issue presented for review, it is the opinion of this court that the trial court failed to make appropriate findings of fact relative to the stop of the vehicle. Thus, the judgment of the trial court is reversed, and this case is remanded for a new suppression hearing.

## I.

## PROCEDURAL HISTORY

On September 18, 1995, the Davidson County Grand Jury returned a two-count indictment charging the defendant with operating a motor vehicle without having his driver's license in his immediate possession, and possessing .5 grams or more of cocaine with the intent to sell or deliver the substance. The defendant subsequently filed a motion to suppress the cocaine seized from his motor vehicle. The trial court conducted an evidentiary hearing on the merits of the motion on December 21, 1995. The court took the motion under advisement.

On July 16, 1996, the trial court filed a "Memorandum Opinion and Order" granting the defendant's motion and suppressing the use of the seized cocaine as evidence. In ruling, the trial court relied upon language from State v. James E. Sanders, No. 01-C-01-9502-CC-00037, Marshall County (Tenn. Crim. App., Nashville, January 17, 1996), stating:

> "Under these facts, it is clear that the conduct of the officers
> was not reasonably related in scope to the circumstances

which justified the stop in the first place, i.e., the alleged tag violation. Despite having stopped the defendant for a traffic offense, the officers immediately exceeded the purpose of the stop by investigating the matter of drugs without a reasonable suspicion of such behavior. Accordingly, we view the conduct as improperly intrusive and unreasonable under the fourth amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution."

Based on Sanders, the trial court concluded:

Applying the analysis to the case at bar, this court concludes that it is not necessary to determine whether the initial stop was justified legally or factually. Under the circumstances here there was no justification to search incident to the arrest, there was no probable cause to search. The drugs were not in plain view . . . the search was illegal and the evidence must be suppressed.

The state moved for and was granted an interlocutory appeal pursuant to Rule 9, Tennessee Rules of Appellate Procedure. Subsequently, this court granted the state's application to review the issue on its merits. Tenn. R. App. P. 9(a) and (b).

## II.

## THE SUPPRESSION HEARING

Officers James Stackhouse, William E. Dillon, and Thomas W. Rollins, Metropolitan police officers, were assigned to detect drug trafficking in the Dickerson Road area. Officers Stackhouse and Dillon were together in an unmarked police car. Officer Rollins was alone in a marked police car.

The officers discussed the defendant and other suspected drug dealers shortly after roll call at the East Sector Precinct. The defendant was a known seller of illicit narcotics in the Dickerson Road area. Officer Stackhouse described the defendant as a "well-known" trafficker in illicit narcotics. He had "received a lot of information" about the defendant's drug-related activities. Most of the information came from other police officers. However, Officer Stackhouse had spoken with two prostitutes who had purchased illicit narcotics from the defendant. The officer was also familiar with the defendant's prior convictions for illicit narcotic transactions.

Officers Stackhouse and Dillon obtained the defendant's pager number. They

3

called the number to arrange the purchase of cocaine. However, the officers could not reach the defendant. They concluded they had the wrong number.

The defendant's vehicle was seen at Jeff's Tire Barn between 5:30 p.m. and 6:00 p.m. Officers Stackhouse and Dillon parked their vehicle in a parking lot where they could observe the defendant's vehicle. Shortly thereafter, the defendant left the business, drove north on Dickerson Road, went to the next street, and made a left turn. The turn was made immediately in front of the two officers. The officers testified the defendant failed to signal before making the left turn. The defendant denied failing to signal.

The defendant drove a short distance and entered the parking lot of Mufflers, Brakes and More, Inc. Officers Stackhouse and Dillon turned their vehicle around and entered the parking lot. They advised the defendant he was being stopped because he committed a traffic violation, namely, failing to signal before making a left turn. Officer Stackhouse asked the defendant for his driver's license. The defendant advised the officer he did not have his license with him. The defendant was removed from his vehicle, advised he was under arrest, and placed inside Officer Rollins's marked police car.

Officers Stackhouse and Dillon searched the defendant's motor vehicle a few minutes after the defendant was arrested and secured in the police car. While officer Dillon was searching the driver's side of the vehicle, he found a small bag containing several rocks of cocaine between the right side of the driver's seat and the console between the two front bucket seats.

The defendant denied he was the owner of the cocaine, and he denied knowing the cocaine was in his vehicle. Later, the defendant told the officers he was on probation in the "big court" and he would have to serve his sentence due to his arrest, which violated his probation. The defendant asked the officers to arrange a "deal" so he would not have to serve the sentence in the prior case; he agreed to help arrange sales of illicit narcotics with other traffickers. The defendant stated there were "bigger fish out there" than him.

The defendant contacted a drug trafficker and made arrangements to purchase an "eight ball" of cocaine. The drug trafficker told the defendant to meet him at an agreed location in another part of Nashville. However, the officers did not want to leave their sector to purchase the cocaine. The trafficker refused to come into the officers' sector.

4

Another police car was dispatched to the location where the sale was to occur, but the trafficker's vehicle could not be located.

## III.

## STANDARD OF APPELLATE REVIEW

When an accused is afforded an evidentiary hearing on the merits of a motion to suppress, the findings of fact made by the trial court are binding upon the appellate court unless the evidence contained in the record preponderates against these findings. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996); State v. Moore, 775 S.W.2d 372, 374 (Tenn. Crim. App.), per. app. denied (Tenn. 1989). This standard of review developed because the trial court, as the trier of fact, must assess the credibility of the witnesses, determine the weight and value to be afforded the evidence adduced during the hearing, and resolve any conflicts in the evidence. However, an appellate court is not bound by the trial court's conclusions of law.

This same standard of review is applicable to suppression issues which are raised in a discretionary appeal pursuant to either Rule 9 or Rule 10, Tennessee Rules of Appellate Procedure. Moore, 775 S.W.2d at 374. As this court said in Moore:

> Issues raised by an interlocutory or extraordinary appeal, after permission to appeal has been granted, are decided in the same manner as if the issues had been raised in an appeal as of right. Since the thrust of the State of Tennessee's interlocutory appeal challenges the ruling of the trial court in granting the defendant's motion to suppress evidence, the time tested rules applicable to the findings of the trial court apply.

775 S.W.2d at 374.

In this case, the trial court did not make complete findings of fact. As previously stated, the court stated it was "not necessary to determine whether the initial stop was justified legally or factually." When this occurs, the standard of review is de novo on the record. See State v. Dougherty, 930 S.W.2d 85, 86 (Tenn. Crim. App. 1996).

5

# IV.

# THE TRAFFIC STOP AND CUSTODIAL ARREST

The state argues the traffic violation, the defendant's failure to signal he was making a left turn, occurred in the presence of the officers, permitting the officers to stop the defendant's vehicle. The defendant denied the failure to signal his turn. A law enforcement officer has the right to stop a vehicle when the person driving the vehicle has committed a traffic offense in the sight and presence of an officer. Tenn. Code Ann. § 40-7-103(a)(1). Hardaway v. State, 202 Tenn. 94, 302 S.W.2d 351 (1957) (speeding); State v. Bryant, 678 S.W.2d 480 (Tenn. Crim. App. 1984), cert. denied, 469 U.S. 1192, 105 S.Ct. 967, 83 L.E.2d 971 (1985) (speeding). As a general rule, the officers would be limited to issuing a citation to the driver of the vehicle, rather than arresting the driver.[1] Tenn. Code Ann. § 40-7-118(b)(1). When the defendant advised the officers he did not have his driver's license in his immediate possession, however, the officers had the right to physically arrest the defendant. Tennessee Code Annotated § 55-50-351 states:

> (a) Every licensee shall have such licensee's operator's or chauffeur's license in immediate possession at all times when operating a motor vehicle and shall display the same, upon demand . . . provided, that it is unlawful for any law enforcement officer of this state, except a state patrol officer or officer of the department, to demand the exhibition of such licenses, unless the operator of the motor vehicle is then engaged in, or immediately prior to such demand has been engaged in, a violation of any municipal ordinance or statute law of this state . . . [a law enforcement officer may] effect the arrest of any person so found to be in violation of this section.

If the officers had not arrested the defendant, he would have continued driving his vehicle without his license in his immediate possession. An officer may not simply issue a citation to a person where "there is reasonable likelihood that the offense would continue." Tenn. Code Ann. § 40-7-118(c)(2).

The officers had the right to stop the defendant if he committed an offense in their presence. If he committed the offense and then could not produce a driver's license,

---

[1]The officers did issue a citation to the defendant for the traffic offense of failing to signal before turning his vehicle.

although he did have a valid license, the officers had the right to effectuate a physical arrest to prevent the defendant from continuing to drive his vehicle without having his driver's license in his immediate possession if the initial stop was valid.

The next question this court must determine is whether the officers had a right to search the defendant's motor vehicle if the initial stop was valid.

## V.

## SEARCH OF THE VEHICLE

The officers searched the defendant's vehicle without benefit of a search warrant. Before the search could be deemed valid, the State of Tennessee was required to establish the search was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement.

Warrantless searches are presumed to be unreasonable. Coolidge v. New Hampshire, 403 U.S. 443, 454-55, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, 576 (1971); State v. Watkins, 827 S.W.2d 293, 295 (Tenn. 1992); Hughes v. State, 588 S.W.2d 296, 301 (Tenn. 1979); Fuqua v. Armour, 543 S.W.2d 64, 66 (Tenn. 1976); State v. Shaw, 603 S.W.2d 741, 742 (Tenn. Crim. App. 1980). When the constitutionality of a warrantless search is challenged by the accused, the State of Tennessee has the burden of establishing by a preponderance of the evidence the search and resulting seizure were justified pursuant to one of the recognized exceptions to the warrant requirement. Coolidge, 403 U.S. at 454-55, 91 S.Ct. at 2032, 29 L.Ed.2d at 576; Hughes, 544 S.W.2d at 301; State v. McClanahan, 806 S.W.2d 219, 220 (Tenn. Crim. App. 1991); State v. Burton, 751 S.W.2d 440, 445-46 (Tenn. Crim. App.), per. app. denied (Tenn. 1988).

A search incident to an arrest is a recognized exception to the warrant requirement of the Fourth Amendment to the United States Constitution and Article I, § 9 of the Tennessee Constitution. See Gustafson v. Florida, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973); United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); Watkins, 827 S.W.2d at 295-96; State v. Reed, 634 S.W.2d 665 (Tenn. Crim. App.), per. app. denied (Tenn. 1982). When an officer effectuates a lawful custodial arrest

7

of a motor vehicle driver, the officer has the right to search the defendant's person incident to the arrest, Robinson, supra; State v. Banner, 685 S.W.2d 298, 301 (Tenn. Crim. App. 1984); the officer also has full authority to search the interior of the motor vehicle incident to the arrest. New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1980); Watkins, 827 S.W.2d at 295-96. The United States Supreme Court said in Belton: "[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." 453 U.S. at 460, 101 S.Ct. at 2864, 69 L.Ed.2d at 775 (footnotes omitted).

The fact the officers placed the defendant in the backseat of a patrol car before searching his vehicle did not destroy the "contemporaneous" requirement of a search incident to arrest. United States v. White, 871 F.2d 41, 44 (6th Cir. 1989); Watkins, 827 S.W.2d at 296; State v. Cabbage, 649 S.W.2d 589, 591-92 (Tenn. 1983); State v. Reed, 634 S.W.2d 665, 666 (Tenn. Crim. App.), per. app. denied (Tenn. 1982). See State v. Moore, 775 S.W.2d at 378-79. In Reed, this court said a search after the person has been "neutralized" does not invalidate the search made incident to arrest. 634 S.W.2d at 666.

If the officers made a valid custodial arrest of the defendant, they had the right to search the defendant's vehicle incident to the arrest. The fact the officers neutralized the defendant before commencing the search did not invalidate the search.

This court must now determine whether the pretextual nature of the stop and resulting seizure had the effect of invalidating the search and seizure of the cocaine.

## VI.

## PRETEXTUAL NATURE OF STOP

A pretextual stop is a stop that "occurs when the police use a legal justification to make the stop in order to search a person or place in connection with an unrelated crime as to which they lack reasonable suspicion." United States v. Ferguson, 8 F.3d 385, 387 (6th Cir. 1993). Pretextual stops have long been condemned in Tennessee. Robertson v. State, 184 Tenn. 277, 284, 198 S.W.2d 633, 634-35 (1947); Cox v. State, 181 Tenn. 344, 348, 181 S.W.2d 338, 340 (1944); State v. Sidney Williams, McMinn County No. 173,

8

1991 WL 6895 (Tenn. Crim. App., Knoxville, April 30, 1991).

Federal courts have established a broad standard for analyzing whether stops are pretextual. In United States v. Ferguson, the Sixth Circuit held "so long as the officer has probable cause to believe a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment." 8 F.3d at 385. In United States v. Whren, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), the United States Supreme Court held that traffic stops are reasonable under the Fourth Amendment when the stop is based upon probable cause to believe a traffic offense was committed, regardless of the subjective motivations of the officers, unless the stop is based upon constitutionally impermissible reasons such as selective enforcement of the law based on race.

In the case of State v. Vineyard, _____ S.W.2d _____ (Tenn. 1997), the Tennessee Supreme Court resolved the question of whether the Tennessee Constitution provides greater protection to a motorist against pretextual stops. The court held the protection provided pursuant to Article I, § 7 of the Tennessee Constitution is "coextensive with the protection afforded by the Fourth Amendment of the United States Constitution. . . . [A] stop based upon probable cause is valid under the Tennessee Constitution without regard to the actual subjective motivations of police officers." Slip op. at 2-3.

In Vineyard, detectives conducting drug-trafficking surveillance observed the defendants traveling 10 miles per hour over the speed limit and changing lanes without using a turn signal. The detectives had received an anonymous tip that the vehicle would be traveling through Bradley County towards Georgia on I-75 after the defendants had obtained a large amount of marijuana. After the officers pulled the vehicle to the side of the roadway, the defendants told the officers there were no weapons or drugs in the vehicle. They gave the officers consent to search the vehicle. The detectives searched the vehicle and seized more than 10 pounds of marijuana.

The supreme court affirmed the denial of the defendant's motion to suppress on the basis the officers had probable cause to believe the defendants committed a traffic violation. The court held the search was legally justified regardless of the officers' subjective motivations as long as the stop was not based upon a constitutionally

9

impermissible basis such as race. In summary, the supreme court adopted the standard enunciated in <u>Whren</u>.

## CONCLUSION

In conclusion, the judgment of the trial court must be reversed and this cause remanded to the trial court for a new suppression hearing. This court cannot resolve all of the factual issues raised during the suppression hearing.

As previously stated, the trial court found it was "not necessary to determine whether the initial stop was justified legally or factually." The evidence adduced at the suppression hearing conflicted as to whether the defendant made a lefthand turn without giving an appropriate signal. Officers Stackhouse and Dillon testified the defendant failed to give an appropriate signal. The defendant testified he gave a proper signal before making the left turn. Only the trier of fact can resolve this conflict in the evidence.

_____
JOE B. JONES, PRESIDING JUDGE

CONCUR:

_____
WILLIAM M. BARKER, JUDGE

_____
JOE G. RILEY, JUDGE