## J. C. SCOGGIN v. THE STATE.

No. 13893. Delivered February 4, 1931.
Rehearing Denied May 13, 1931.

The opinion states the case.

*McGaugh & Darroch,* of Brownwood, and *Baker & Baker,* of Coleman, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—The offense is transporting intoxicating liquor; the punishment, confinement in the penitentiary for one year.

The sheriff of McCulloch County testified that appellant and two companions drove through the town of Brady at a high rate of speed; that he pursued the parties and overtook them about five miles out of town on the highway; that he had to run sixty or sixty-five miles an hour to overtake the parties; that the car appeared to be heavily loaded; that after appellant had stopped the car he walked up to the car and smelled whisky; that he advised appellant that he had come through town at an unlawful rate of speed; that after smelling whisky he told appellant that he was under arrest for speeding. Appellant's companions were directed to get out of the car and were placed in charge of the officer accompanying the sheriff. The sheriff rode in the car with appellant, where he found a fruit jar with whisky in it. Before entering the car the sheriff had walked around to back of the car and observed that the turtle-back would not let down. There was something under the turtle-back covered with bedding, which looked like kegs. After taking appellant back to town the sheriff searched the car and found about 55 gallons of whisky.

The testimony of the officer touching the result of the search was objected to on the ground that he had no warrant of arrest and had no search warrant authorizing the search; that no probable cause existed for making the search; and that the officer had no right to arrest appel-

lant for exceeding the speed limit, in view of the fact that he was not in the uniform prescribed by law. There being no question of the fact that appellant was exceeding the speed limit, the officer's right and duty was to arrest him, and if at the time of or soon after such arrest, the officer discovered evidence of the presence of whisky, his right of search would follow under the facts of this case.

There is complaint also that the sheriff, at the time he arrested appellant, did not then have on a cap and badge which is made, by the terms of chapter 47, Acts Second Called Session of 41st Legislature, 1929 (Vernon's Ann. P. C., Art. 803a), a part of the uniform commanded by said act to be worn by all officers when they arrest, with or without warrant, any person for violation of the laws of this State relating to the speed of automobiles. By the terms of said act authority to arrest for such violation of the law is expressly denied any officer unless he wears a diamond shape badge and a cap, coat and trousers of blue or dark grey.

By the terms of Sec. 8, Chap. 42, Acts of the Second Called Session of 41st Legislature, 1929, (Vernon's Ann. P. C., Art. 827a, Section 8), the maximum rate of speed for automobiles on public highways in Texas is now 45 miles per hour. Article 803, P. C., 1925, in general terms, authorizes any officer to arrest without warrant any person found violating the provisions of the preceding chapter, which is Chap. 13, Title 1 of our Penal Code, which chapter includes speeding in cars. By other provisions of our law officers are commanded to arrest without warrant persons committing offenses in certain cases. It is the plain statutory duty of every peace officer of this State to promptly and faithfully execute all process, including warrants of arrest, which are placed in their hands, and punishments are provided by law for such officers as wilfully or negligently fail in such duties.

Whether intended or not,—there are no distinctions made by the terms of Chap. 47, supra, between officers in the cities and in the country, between sheriffs, constables, State rangers or city officers, whether with or without warrant, whether the offense be committed in the view of the officer, or the warrant be brought to him for execution after the offense has been committed, whether the matter be one of emergency, or one in which there is ample time to secure and don the distinguishing apparel demanded by said statute. Sheriffs and State rangers as well as rural constables out in the wide open spaces from Texline to Brownsville may, under our law, arrest in whatsoever garb they please or may happen to have on when the occasion arises,—offenders for murder, robbery, theft, etc., etc.; but under the terms of Chap. 47, supra, they may not in any way engage in the arrest of one whose offense is the dangerous one of driving a car at a rate of speed in excess of 45 miles per hour on our public highways, unless such officers not only have a uniform con-

sisting of a diamond badge, a cap and a coat and trousers of blue or dark grey,—but also have it on at the very time they make such arrest. If the sheriff at Alpine sees some speed fiend coming 75 miles an hour down the street toward their beautiful new high school, though on the campus and surrounding streets contiguous thereto there be hundreds of children, if such officer happen to be wearing his customary comfortable sombrero, he can not interpose the law's protective and arresting arm, but must rush home or to his office and get his badge and cap and don his coat and trousers of blue or dark grey, no matter how many children may be killed or how plain and patent his duty be in the premises. Even so of the sheriffs at Amarillo and El Paso and other places, and this too without exception for emergency or any other regard.

To give effect to this law in these days when every man with a wheelbarrow income must needs have his automobile and strain every nerve to keep up with the procession, and make every effort to see who can get there the quickest,—the officer who wants to do his duty can never be without his faithful badge, cap and coat and pants of blue or dark grey. The logic of the giving effect to a statute like this would be that if the legislature saw fit and was willing to go to that extent, they might say that officers seeking to arrest for murder must wear a garb of a certain color, cut and texture,—another when the offense is rape; still another when the offense is hijacking, etc., etc., and that the courts will uphold such legislation. The mere statement of such a proposition demonstrates its folly. If the legislature can constitutionally regulate the garb of one set of public officers in the discharge of any part of their duty, they can pass laws directing what garb shall be worn by all officers when acting as such.

Section 1 of Art. 2 of our Constitution, announcing the separation of the powers of our government into three distinct departments, forbids unwarranted interference of one department with another in the following language: "And no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instance herein expressly permitted."

The wearing of one kind of color or cut of clothes can by no stretch of the imagination be held, ipso facto, to legitimately affect the legality or fairness of an arrest of one charged with crime, and in our opinion such statute as that above discussed is an unwarranted interference by one branch of our government with another. State v. Moore, 57 Texas, 314; Houston Tap Ry. Co. v. Randolph, 24 Texas, 317.

There is no provision of our statute which furnishes to or provides for the officer, the equipment and paraphernalia made necessary as a prerequisite to the discharge of his duties by an officer acting under this statute. In the march of the seasons the officer must be provided with a winter cap, coat and pants of blue or dark grey, as well as a summer

outfit of like hue and description inasmuch as the wearing of same in the discharge of his official duties is made compulsory. What right has the legislature, in view of our Bill of Rights, Sec. 19, Art. 1, of our Constitution, which forbids that any citizen of this State,—which includes its downtrodden peace officers,—shall be deprived of property, privileges and immunities except by due course of the law of the land,—to compel by statute a constable whose income from his office is at best all too scant, to invest his money in two changes of raiment, i. e. a summer and a winter cap, coat and trousers of blue or dark grey, before he can adequately enforce the laws or protect the people of his community from the all pervading speed fiends who throng our highways? The legislature passed a law forbidding under pains and penalties that any man should build three miles of straight fence without a gate therein. They provided no compensation for the making of the gate. The law was stricken down. Dilworth v. State, 36 Texas Crim. Rep., 189, 36 S. W., 274. In holding unconstitutional a law requiring the erection at all stations on the lines of the railway companies in this State, of water closets, our Supreme Court held such law so oppressive, arbitrary and practically impossible of compliance therewith as to be a violation of the 14th Amendment to the Federal Constitution. See M., K. & T. Ry. Co. v. State, 100 Texas, 420, 100 S. W., 766. So say we of the provisions of the statute under consideration. It practically says to every peace officer in this State, whose duty under mandatory provisions of our general laws it is to enforce the law and in emergency cases make arrests at any hour or place when the occasion arises,—that such officer may not perform such plain duty, unless forsooth he be then properly clad, that is, have on a diamond-shaped badge, a cap and a coat of blue or dark grey and trousers of like hue.

Illustrations might be multiplied ad infinitum setting forth the impossibility of the enforcement of such law compatible with the provisions of numerous other statutes of this State.

We can not bring ourselves to believe that the legislature intended to thus hamper, hinder and cripple the officers of this State, or that they purposed to penalize for wilful failure and neglect every sheriff, deputy, ranger, etc., who fails to provide himself with such accouterment,—and by reason of such failure is unready, when occasion calls upon him, to protect humanity from the dangers of speeding cars, to arrest those thus violating the law, and who thus would subject himself to punishment for such wilful failure and neglect.

For the reasons above stated we can not agree with appellant's contention, and hold that the provisions of said Chapter 47, supra, are violative of constitutional inhibitions.

The judgment will be affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—The soundness of the conclusion announced in the original opinion that the provisions of Chapter 47, Acts of the 41st Legislature, 2nd Called Session, was inoperative is challenged by the appellant in his motion for rehearing and by argument prepared upon behalf of the State.

Section 1, C. 47, Acts of 41st Leg. (1929), 2nd C. S., p. 83, (Vernon's Ann. P. C., Art. 803a) amending C. 218, Gen. & Sp. Laws, Reg. Sess. 40th Leg., reads as follows:

"No officer shall have authority to make any arrests for violation of the laws of this State relating to the speed of motor vehicles unless he is at the time of such arrest wearing a uniform and badge clearly distinguishing him from ordinary civilians or private citizens, and shall have no authority to make any such arrests by designedly remaining in hiding or lying in wait unobserved in order to trap those suspected of violating the speed laws in reference to motor vehicles. No such officer, and no sheriff, constable, marshal, policeman, traffic officer, or other officer shall be entitled to any fee for making an arrest or serving a warrant of arrest or claim, demand or receive any witness fee *or* commitment fee for an alleged violation of any law of this State relative to such speeding. It shall be the duty of the district or county attorney, as the case may be, to dismiss any and all prosecutions wherein it is shown that the arrest was made by *designatedly* remaining in hiding or lying in wait unobserved in order to trap those suspected of violating such speed law, and this provision shall apply to such conduct by any highway officer, sheriff, deputy sheriff, constable, marshal, policeman, or any other officer of this State, or political subdivision thereof, provided any officer pursuing or lying in wait in any vehicle other than a motorcycle shall be held to be designedly remaining in hiding as defined in this Act.

"The venue of any prosecution for speeding of motor vehicles under State laws shall be in the justice precinct only wherein the offense was committed or in the precinct of the defendant's residence. The badge herein required to be worn by an officer making an arrest shall be diamond-shaped, and the uniform prescribed to be worn by such officer or officers shall consist of a cap, coat and trousers of dark grey color, provided that the uniform worn by city policemen within the corporate limits of an incorporated city or town may be either blue or dark grey in color.

The statutes touching the use of motor vehicles upon the highway are found in Chapter 1, Title 13, consisting of Articles 783 to 827, inclusive. See P. C., 1925, pp. 173-184, also Chapters 41 and 42, Acts of 41st Leg., 2nd C. S.

In Sec. 18, Chap. 42, Acts of 41st Leg. (1929), 2nd Called Sess,,

that part of Chapter 1, Title 13, Penal Code, 1925, composed of Arts. 789, 793, 818, 823, and 824, are repealed. These expressly repealed articles related to the speed of a motor vehicle, the classification and over weight of certain commercial vehicles, etc. The articles repealed are covered by the Acts of the Legislature in Chapter 42, supra.

In Art. 803, Title 13, P. C., it is said: "Any peace officer is authorized to arrest without warrant any person found committing a violation of any provision of the preceding articles of this chapter."

Sec. 16 of Chap. 42, supra (Vernon's Ann. P. C., Art. 827a, Sec. 16), authorizes and requires the State Highway Department to employ a number of inspectors known as the State Highway Patrol, who are given certain duties not necessary here to mention, and for the purpose of enforcing said law and other State laws relating to traffic on the highways they are given the powers of peace officers.

In Art. 36, C. C. P., peace officers are enumerated as follows: "The following are 'peace officers': the sheriff and his deputies, constable, the marshal or policemen of an incorporated town or city, the officers, non-commissioned officers and privates of the State ranger force, and any private person specially appointed to execute criminal process."

The duties of such officers are prescribed in Art. 37, C. C. P., which reads as follows: "It is the duty of every peace officer to preserve the peace within his jurisdiction. To effect this purpose, he shall use all lawful means. He shall, in every case where he is authorized by the provisions of this code, interfere without warrant to prevent or suppress crime. He shall execute all lawful process issued to him by any magistrate or court. He shall give notice to some magistrate of all offenses committed within his jurisdiction, where he has good reason to believe there has been a violation of the penal law. He shall arrest offenders without warrant in every case where he is authorized by law, in order that they may be taken before the proper magistrate or court and be tried."

Articles 323 and 324, P. C., denounce as a penal offense the refusal or neglect to perform the duties required in Arts. 36 and 37, C. C. P.

In Title 5, Chap. 1, C. C. P., are the circumstances under which arrests without warrant by State and municipal officers may be made.

The articles of the statute mentioned above define and restrict the use of motor vehicles on the public highways of the State, prescribe the penalties for the violation of the regulations, create a special police force with the authority of peace officers in the matter of enforcing obedience to the highway regulations in co-operation with the regular peace officers, upon all of whom are conferred the right and duty to arrest without warrant transgressions of the provisions of the State Highway Law. By the statute mentioned, as well as by the general law, it is made the duty of peace officers to arrest for all violations of the laws of the State and to

execute process of the courts and of the legislature. There are penal laws upon the statute books to punish officers who refuse or neglect to perform the duties imposed upon them. See Arts. 36 and 37, C. C. P., and Arts. 323 and 324, P. C.

By Sec. 1, Chap. 47, Acts of 41st Leg., supra, the right of all peace officers to arrest persons violating the laws relating to the speed of motor vehicles is forbidden, unless, the officer is wearing a uniform as prescribed in the act mentioned.

In Art. 1, Sec. 28, Const of Texas, is found the following: "No power of suspending laws in this State shall be exercised by the legislature."

Nothing in Chap. 47, supra, or eleswhere in the statutes demands that peace officers shall wear uniforms in the discharge of their duties. Under the terms of Chap. 47, if he does not wear the uniform he cannot obey the general law and arrest the offender. The option is with the officer to enforce the law or suspend it as he pleases. He may at one hour obey the law and at the next hour discard the uniform and suspend the law demanding the arrest of violators thereof. If the officer elects to ignore Arts. 36 and 37, supra, and Chap. 1, Title 5, supra, and refuses or neglects to make an arrest of violators of the speed law, he would not, by any specific legislative declaration, be exempt from suffering the penalty prescribed by Art. 324, P. C. If he may, at his pleasure, simply by neglecting to wear a uniform, exculpate himself from the penalty mentioned, it is difficult to find sound ground for holding that in so doing he does not suspend the operation of the penal statutes.

A statute made penal the sale of railroad tickets by any person other than an agent of some railroad company. In the law was found the following language: "Provided, that the provisions of this act shall not apply to any person holding a ticket, upon which is not plainly printed that it is a penal offense for him or her to sell, barter, or transfer said ticket for a consideration."

The fact that it was optional with the railroad company issuing the tickets to print or fail to print on its tickets the indorsement quoted above, and thereby at its option made the sale of the tickets penal or otherwise, was held by this court to confer upon the company issuing the tickets the authority to suspend the law penalizing the sale of tickets. See Jannin v. State, 42 Texas Crim. Rep., 631, 51 S. W., 1126, 62 S. W., 419, 53 L. R. A., 349. In the case of T. & P. Ry. Co. v. Mahaffey, 98 Texas Crim. Rep., 392, 84 S. W., 646, the same law was held invalid by the Supreme Court of this State.

The law relating to fire-escapes on buildings was held violative of Art. 1, Sec. 28, of the Constitution for the reason that it made no rule touching the character of such fire-escapes but left that optional with

the State Fire Marshal. See Dockery v. State, 93 Texas Crim. Rep., 220, 247 S. W., 508.

A like ruling was made in ex parte Adlof, 86 Texas Crim. Rep., 13, 215 S. W., 222, concerning an ordinance governing a public cemetery in which the privilege of dressing graves and planting flowers was not defined in the law but was left subject to the judgment of the superintendent of the cemetery.

Many examples of the application of Art. 1, Sec. 28 of the Constitution are found in the reports in this State, both of the Supreme Court and this court. The restriction against the suspension of laws, rendered void acts of the legislature leaving the enforcement of a criminal law in given localities to the popular vote, as Lyle v. State, 80 Texas Crim. Rep., 606, 193 S. W., 680; State v. Swisher, 17 Texas Rep., 441; Brown Cracker & Candy Co. v. City of Dallas, 104 Texas Rep., 290, 137 S. W., 342; Arroyo v. State (Texas Crim. App.), 69 S. W., 503.

The subject before this court is not the authority, by proper regulation, to require peace officers to wear on their person some insignia of office. The vice in the law is referable to the fact that the terms in which the legislature has expressed its will offend against the mandate of the Constitution which declares that no law can be suspended save by the legislature. As understood by the writer, the law, as set forth in Chap. 47, supra, leaves the public without any protection against the evil resulting from and the danger attending the unlawful speeding of automobiles upon the highway. Under the law, if the writer understands it, the absolute duty is imposed upon no peace officer to arrest offenders for violating the speed law. It is permissible that he arrest them provided he wear the uniform described in the statute. There is nothing, however, in the statute which requires him to wear a uniform, and without a uniform he can make no such arrest. The right and duty of arrest, therefore, depends not upon the mandate of the law but upon the option of the officer. The enactment of Chap. 47, supra, reflects a meritorious effort of the makers of the law to shield the individual from abuses arising from the privilege of arresting without warrant persons violating the speed law. Confidence is expressed in the ability of the law-makers to find means of protecting the public from the evil mentioned. The present statute, however, is regarded as in conflict with the fundamental law, and for that reason and those advanced in the original opinion the motions for rehearing are overruled.

*Overruled.*