The People of the State of New York, Respondent, *v.* Anna K. Offermann, Appellant.

Supreme Court, Erie County, October 21, 1953.

*Alexander C. Cordes* and *Francis J. Offerman* for appellant.

*Fred C. Maloney, Corporation Counsel* (*Clarence Wertheimer* of counsel), for respondent.

WARD, J. This is an appeal, pursuant to the provisions of section 76 of the Buffalo City Court Act, from a judgment rendered by the Hon. MICHAEL E. ZIMMER, a Judge of the City Court of Buffalo, convicting Anna K. Offermann, appellant herein, of a violation of subdivision 3 of section 14 of chapter LX of the ordinances of the City of Buffalo and fining her $25. The offense charged is that the defendant-appellant drove her automobile at a rate of speed in the city of Buffalo greater than that permitted by the ordinances.

Upon arraignment, the defendant appeared by counsel and a plea of not guilty was entered on her behalf. The People attempted to prove her guilt by the testimony of three members of the Buffalo police department. The defendant rested upon the conclusion of the People's case and counsel for defendant moved for dismissal and the discharge of the defendant upon the ground that there was no competent evidence of a violation of the ordinance charged in the summons. The motion was denied and the defendant found guilty. A trial was held without a jury.

The only question involved in this appeal is whether the defendant was convicted upon competent evidence.

This is a case of first impression in an appellate court of this State, insofar as I can determine from the reported cases. This appeal concerns the admissibility in evidence of the reading of an electrical device purporting to record the speed of the defendant's automobile. Similar devices are recent additions to the armory of weapons now widely used by law enforcing agencies in an effort to control high speeds on our highways and thus reduce the staggering loss of life.

From the record before me, it appears that the City of Buffalo has equipped one of the cars used by its police department with one of these devices. The use of the device is as

follows: the car so equipped, hereafter called the "radar car" is placed along the edge of the roadway. Another police car is placed a distance of one quarter of a mile beyond the radar car facing in the same direction. This latter car, hereafter called the "pickup car", is equipped with a three-way radio, as is the radar car, permitting communication between these two cars. There are two police officers in each car. The electrical device in the radar car consists of three parts: a transmitter, a receiver and a recording dial. The transmitter in some manner casts out a beam of electrical energy diagonally to the rear and side of the radar car. When a car approaching the radar car from the rear passes through this beam, a part of the energy of the beam is reflected back from the passing car to the receiver in the radar car, which energy in turn actuates a needle on the dial and, as claimed by the People, accurately records the speed of the passing car. This reading is observed by one of the officers in the radar car who communicates this reading and a description of the passing car to the pickup car by radio. An officer in the pickup car then stops the motorist, hands him a summons with the speed noted, charging him with violating section 14 of chapter LX of the ordinances of the City of Buffalo.

The ultimate fact to be proved herein is the speed of the defendant. It is charged here that this defendant was traveling forty-one miles an hour in a thirty mile-an-hour zone. In an effort to prove this fact, the People relied entirely on the reading of the dial. If this defendant were to be found guilty, the burden rested upon the People to establish the accuracy of this reading. In an effort to do so, officer Chaplin testified that several times earlier that day the pickup car had been driven through the beam cast out by the radar car. At these times he had reported by radio to officer Kelly in the radar car the speed of the pickup car as recorded by the speedometer of the pickup car. He also testified over objection that the speed of the pickup car agreed with the reading on the dial of the radar car. Then officer Kelly testified that he observed the dial on the radar car at these times and found in each instance that the reading on the dial agreed with the reading of the speedometer of the pickup car as reported to him by officer Chaplin. Counsel for defendant objected to this testimony on the ground that it was hearsay, arguing that officer Kelly could not know the reading on the speedometer of the pickup car except as told to him by officer Chaplin, and that officer Chaplin could not know the reading on the dial of the radar car except

as told to him by officer Kelly. Although the People claim that a record was made at the time of these transactions, no such record was offered in evidence as provided by section 374-a of the Civil Practice Act. It seems clear that when officer Kelly testified that the reading on the dial in the radar car corresponded to the reading of the speedometer in the pickup car he was relying upon what officer Chaplin had told him over the radio, and when officer Chaplin testified that the reading on the dial in the radar car corresponded with the reading on the speedometer of the pickup car, he was relying on what officer Kelly told him over the radio. Thus, the testimony of each as to the reading on the instrument of the car of the other was hearsay. As above, counsel for defendant objected to this testimony on this ground but his objection was overruled when the testimony was received. The trial court erred in receiving this testimony over objection.

The People, in a further effort to establish the accuracy of the reading on the dial of the radar car offered the testimony of the third police officer, Joel Crandall. This witness is the acting chief of the radio division of the Buffalo police department. Since 1910 he has been concerned with radio and since 1932, with the Buffalo police department. He has had no experience with radar, according to his testimony, except to install the instruments in the police car under the direction of his superior. He has had no formal training in radio, engineering, or electronics. The People attempted to qualify this witness as an expert. The trial court, under its own examination, stated repeatedly that the witness was not qualified. Typical of the language of the trial court are the following excerpts from the trial record:

Page 27, line 14:

"Well, I suppose we got to get the man that made it or the man that put it together?"

Line 19:

"We got to have an engineer that can tell us how radar works."

Page 28, line 6:

"You would have to have the man that put it together, or the man that can give us the exact set-up of it, to see if it is perfect, or how perfect it is. This is a test case; I guess that is what they are calling it, and we got to get that proof in."

Similar comments of the trial court appear on page 31, lines 13, 20; page 32, lines 2–6; page 33, lines 9, 13. It is clear from a reading of this record that the trial court was not satisfied

with the qualifications of the witness Crandall to give testimony as an expert concerning the accuracy of this device. Both sides moved for an adjournment so that an expert could be produced. The motions were denied. The trial court should have granted an adjournment at this point for that purpose. The failure to do so seems to me to be an abuse of discretion. After some further examination by the trial court of the witness Crandall, and although no further facts appeared, touching upon the qualifications of the witness, the court permitted Crandall to testify over the objection of the defendant as to the construction and operation of the device and permitted him to state an opinion that it was accurate. I find nothing in the record to support the qualification of this witness to give an opinion as to the accuracy of this device. Ordinarily, the qualifications of an expert are within the reasonable discretion of the trial court and such discretion when exercised is not open to review unless in deciding the question, the trial court has made a serious mistake or committed an error of law or has abused his discretion. The court below fell into error in permitting the witness Crandall to give an opinion as an expert upon the accuracy of this device. This is especially so after the trial court had repeatedly stated that the witness was not qualified. The testimony of Crandall, therefore, as to his opinion is not competent and should have been excluded by the trial court when the objection was made by the defendant.

The only other testimony, if it can be considered as such, touching upon the accuracy of the device, is the statement by the trial court that he himself had participated in the preliminary tests of this device preparatory to holding the term of the City Court in which similarly accused persons would be tried. The court's statement is found beginning on page 50, line 15, as follows: " And I believe that it is scientifically perfect to a degree. I took my '53 Super V-8 Buick out there that was purchased on the first of April and I tested it against the radar system — and I had my own speedometer tested two days before that for perfection — and it was 54 miles an hour on the nose. I didn't tell the officers I was going to make a run on them. After I watched it for an hour or three quarters of an hour I said, ' Now I will test it with my own car ', and it was right on the second. I had my secretary with me and my fourteen year old boy, and I watched the wheel on the highway, and my secretary and fourteen year old boy were watching the speedometer, their eyes were on the speedometer, and my eyes

on the highway, and 54 miles an hour, perfect, on the dot, on my speedometer and on the radar car.''

Counsel for defendant excepted to this as well as the receipt in evidence of the other testimony touching on the accuracy of the device.

Tested by the ordinary rules of evidence, the statement above made by the court is hearsay as to the reading on the dial of the radar car. It is also offensive because it brings to the trial of this action private knowledge by the trier of the facts upon a subject not of common knowledge. It is clear that the trier of the facts based his opinion as to the accuracy of this device to a large extent upon such private knowledge. Counsel for the defendant did not move the Trial Judge to disqualify himself for having taken such an authorized view. The taking of an unauthorized view, either by a jury or by the Trial Judge, is grounds for a new trial. The possession of such knowledge by the trial court does not lie within the field of judicial notice under the circumstances of this case, as the operation of this device is not a practical application of scientific facts which are generally known or ought to be known.

There was received no competent evidence of the guilt of this defendant.

It may be unseemly to write further. However, as above, it appears that this case is a case of first impression in an appellate court. Many communities have acquired devices similar to the one here. Law enforcement should keep in stride with the advances of science and courts should receive scientific proof when presented in accordance with the established rules of evidence. These rules have safeguarded our lives, our freedoms and our property since the establishment of the common law, and should not be lightly set aside in the name of convenience. It may be that these electronic devices will become a great and much-needed weapon in the armory of law enforcement. The science which embraces electronics is wonderful and mystifying. It brings into our homes voices from the far side of the world. On the screens of our television sets, we see the images of events occurring many hundreds of miles away. With searching eye, it peers into the heavens, alert to detect the approach of a foe by air. It guides giant missiles at supersonic speed into outer space, probing its mysteries, and from great heights detects an enemy target selected for destruction. In a hundred other ways it touches our lives today. In the not too distant future this science may bring civilization the horrors of a push button war, but it must not bring push button

justice unless and except such justice is surrounded by the long established rules of evidence.

The Legislature of this State has in the past declared that rebuttable presumptions arise from certain circumstances. For example, the presence of certain weapons in vehicles (Penal Law, § 1898-a). That possession of certain weapons raises the presumption that the possessor intends to use such weapons unlawfully. Also the presence of certain weapons in a stolen automobile is presumptive evidence of illegal possession by all the persons found in such vehicle at the time (Penal Law, § 1897). Again, by subdivision 5 of section 70 of the Vehicle and Traffic Law, the Legislature has provided that the presence of alcohol in a certain percentum by weight in the blood is prima facie evidence that the defendant therein was in an intoxicated condition. The Legislature in its wisdom might see fit to declare that the reading of an electrical timing device similar to the one here may be admitted in evidence as prima facie evidence of the speed of the automobile of an accused, after such device has been certified as accurate by the authority designated by the Legislature. By such legislation, the People will be relieved of the burden of proving the accuracy of the electrical timing device upon each trial and by expert testimony. The traveling public will be protected against convictions based upon the reading of an unproven and possibly inaccurate device, and of equal importance, the rules of evidence will not be violated.

The judgment of conviction is reversed on the facts and the law and a new trial is ordered.