HORACE E. WILSON V. STATE.

No. 30,784. June 10, 1959.
Motion for Rehearing Overruled October 28, 1959.
Second Motion for Rehearing Overruled November 11, 1959.

MORRISON, Presiding Judge, concurring on Appellant's Motion for Rehearing.

DAVIDSON, Judge, dissenting on Appellant's Motion for Rehearing.

*Trueheart, McMillan, Russell & Westbrook (Joel W. Westbrook,* of Counsel), San Antonio, and *Elbert Jandt,* Seguin, for appellant.

*Leon Douglas,* State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

The offense is speeding; the punishment, a fine of $101.00.

Our able state's attorney confesses error, and we agree. The applicable portions of his brief which we adopt as the opinion of this court are as follows:

"The state's testimony reflects that John E. Breslin, Homer Spellman, and A. R. James, Highway Patrolmen of the Texas Department of Public Safety, were working as a team in the operation of a radar unit on U. S. Highway 90, approximately ten miles west of Seguin on the 10th day of May, 1956, that the radar set was placed on a box at a guard post of a culvert, pointing in a westerly direction, that appellant was driving a Cadillac automobile in an easterly direction; it was admitted that when the Cadillac passed the radar unit Patrolman Breslin would testify that the machine read 72 miles an hour, that Patrolman Spellman was approximately one thousand feet down the road from Patrolman Breslin, that after a radio communication between them Spellman saw appellant driving the Cadillac, and stopped him.

"William S. Duncan testified that he was an electronics supervisor for the Texas Department of Public Safety; that he had checked the radar unit in February, 1956, prior to, and in July, 1956, after the time in question, with an audio-oscillator and vacuum tube change core which was calibrated at a known speed; that it checked the same both times, from zero to one hundred miles an hour; that the machine operated on the doppler effect; that it was ninety-eight per cent accurate under any and all conditions.

"David G. Cadena, a witness called by appellant, testified

that he was employed by the Southwest Research Institute in San Antonio in the electronics physics laboratory; that he had degrees from St. Mary's University and the University of Texas; that he had experience in communications in World War II, and had been superintendent in communications for an airline company; that if the radar machine was not set up correctly, it could result in an error of 20%.

"Appellant challenges the sufficiency of the evidence to show the accuracy of radar machines generally. This is a matter of first impression in Texas, but there is no lack of authority in other states.

"The early cases support appellant's contention. In People v. Offermann, 204 Misc. 769, 125 N.Y.S. 2d 179 (1953), the conviction was based upon the sole evidence of the radar speedmeter which showed the accused was traveling 41 miles per hour in a 30-mile an hour zone. No expert witness was called to testify to the construction, theory and accuracy of the speedmeter. The trial court stated the results of his own test of the accuracy of the radar speedmeter. The cause was reversed, among other grounds, because no expert testimony was introduced as to the construction, theory and accuracy of the speedmeter, and that the judge had taken into consideration his private knowledge on a subject which 'does not lie within the field of judicial notice under the circumstances of this case as the operation of this device is not a practical application of scientific facts which are known or ought to be known.'

"In People of City of Rochester v. Torpey, 204 Misc. 1023, 128 N.Y.S. 2d 864 (1953), the conviction was for speeding; the police officers, who observed the car, testified that they were of the opinion that the speed was 45 miles per hour; the radar speed device showed a reading of 43 miles per hour; that either of these speeds was over the limit. The conviction was affirmed upon the basis of the opinion of the officers, but the court pointed out for a conviction to stand solely on the speed indicator of the radar equipment it would be necessary to establish by expert testimony the accuracy of radar for measuring speed.

"In People of City of Buffalo v. Beck, 205 Misc. 757, 130 N.Y.S. 2d 354 (1954), the conviction was reversed because the trial court took judicial notice of the operation and accuracy of radar to establish speed of automobiles.

"The recent cases hold that expert testimony is not necessary

to show the construction, theory and accuracy of the radar device as a class of scientific instruments.

"State v. Dantonio, 18 N.J. 570, 115 A. 2d 35 (1955), a conviction for speeding, was affirmed. Dr. John M. Kopper, a recognized expert, testified for the prosecution; the defense offered expert testimony to show that the graph of the tacograph on the bus showed that it was traveling 5 miles per hour less than the radar speedmeter showed. The court held that the accuracy of the device was for the trier of facts and that such expert testimony as to the operation and construction of the radar unit would not be necessary in the future.

"In People v. Magri, 3 N.Y. 2d 562, 147 N.E. 2d 728 (1958), the court took judicial notice of radar units as a class of scientific instruments when no expert testimony was offered.

"City of East Cleveland v. Ferell, 168 Ohio St. 298, 154 N.E. 2d 630 (1958), is in accord with the recent decisions that readings of a radar speedmeter may be accepted in evidence without the necessity of offering expert testimony as to the scientific principles underlying them. The well-reasoned opinion contains a concise statement as to the operation of radar units as follows:

" 'The radar speed-detecting devices commonly used in traffic control operate on what is known as the Doppler effect and utilize a continuous beam of microwaves sent out at a fixed frequency. The operation depends upon the physical law that when such waves are intercepted by a moving object the frequency changes in such a ratio to the speed of the intercepted object that, by measuring the change of frequency, the speed may be determined. See The Scientific Reliability of Radar Speedmeters, by Dr. John M. Kopper, 33 North Carolina Law Review, 343.

" 'The Doppler effect, which has been used for over a century in determining the speed of stars and for over a decade in measuring the speed of airplanes and their height above the ground, has been experienced by probably every motorist when driving a car whose horn is being sounded. The pitch or frequency of the sound falls suddenly just as the vehicle is passed.

" 'In operation, the radar device, which, according to 1 Underhill's Criminal Evidence (5 Ed.), 280, Section 154, is now

used in 43 states, the District of Columbia and Hawaii, is set up along the side of a road or street, usually in or upon a parked police car, with the beam being played along the highway. When a moving vehicle crosses that beam, the speed of the vehicle is registered on a graph or calibrated dial on the meter device. The speed, if it is excessive, is then transmitted by radio by the officer reading the graph or dial, along with a description of the vehicle, to another officer stationed some distance farther on, and the vehicle is intercepted by this officer.'

"The court quotes Professor Wigmore in The Science of Judicial Proof at page 450, as follows:

" '* * * since the additions made possible to our unaided senses are due to the use of instruments constructed on knowledge of scientific laws, it is plain that the correctness of the data thus obtainable must depend upon the correctness of the instrument in construction and the ability of the technical witness to use it. Hence, the following three fundamental propositions apply to testimony based on the use of all such instruments:

" 'A. *The type of apparatus purporting to be constructed on scientific principles must be accepted as dependable for the proposed purpose by the profession concerned in that branch of science or its related art.* This can be evidenced by qualified expert testimony; or, if notorious, it will be judicially noticed by the judge without evidence.

" 'B. *The particular apparatus used by the witness must be one constructed according to an accepted type and must be in good condition for accurate work.* This may be evidenced by a qualified expert.

" 'C. *The witness using the apparatus as the source of his testimony must be one qualified for its use by training and experience.'*

"The trial court held that the officer in charge of the radar equipment is only required to read the meter in the same way that a speedometer is read, that a police officer with five years' experience is certainly qualified to do that. In the present case, Officer Breslin had a 9½ years' experience with traffic as a highway patrolman.

"There remains appellant's contention that the proof was

insufficient to show the accurary of this particular radar unit in its operation. Patrolman Spellman testified that he oversaw the calibration of the speedometer of the patrol car in March, that it was calibrated in June and no correction was needed, that this particular speedometer was used to check the radar unit, that he rode in the car and watched the speedometer of the car register 60 miles per hour as it passed the radar unit.

*"There is no showing what the speedmeter of the radar unit registered when the patrol car was driven by for the test.*

"Dr. John M. Kopper, who has testified as an expert in many of the reported cases, states that it is important to check the meter for accuracy each time it is set up for use before the beginning of the period of observation of a highway and at the end of the period; that the check could be made with a car having a calibrated speedometer run through the zone of the meter twice, once at the speed limit for the zone, and once at a speed greater. See The Scientific Reliability of Radar Speedmeters, 33 North Carolina Law Review, 343, 353.

"Appellant's contention that the proof of the accuracy of the particular unit is necessary is well taken, because the proof fails to show the results of the test as to its accuracy where it was operated.

"Virginia has a statute providing that the results of radio-microwaves check shall be prima facie evidence of the speed of such motor vehicle. Va. Code Ann., Sec. 46-215.2; but, even with such a statute, it was held that there must be proof that the machine has been properly set up and recently tested for accuracy. Royals v. Commonwealth, 198 Va. 876, 96 S.E. 2d 812; See 24 Missouri Law Rev. 196.

"In People v. Magri, supra, the conviction was upheld, but the court stated:

" 'Were the only evidence here that of untested radar equipment, we would hold * * * that such evidence is insufficient to sustain a conviction for speeding.'

"This Court reversed a conviction for driving while intoxicated obtained on evidence of intoxication by the Harger breath test for alcohol because it was not shown that the chemicals were compounded to the proper percentage for use in the

machine, nor that the operator and machine were under constant supervision, and stated:

" 'This Court is anxious to move along with the progress of science, but we must zealously guard the accused and the public against the use of so-called scientific evidence which does not bear the stamp of approval of scientists generally.' Hill v. State, (158 Texas Cr. Rep. 313), 256 S.W. 2d 93, 96.

"In the absence of evidence of one of the essential elements, the accuracy of the radar unit on the location, the judgment should be reversed and the caues remanded.

"Leon Douglas, State's Attorney."

Accordingly, the judgment is reversed and the cause remanded.

ON APPELLANT'S MOTION FOR REHEARING

WOODLEY, Judge.

The charging portion of the complaint reads: "did then and there operate and drive a vehicle, to-wit: an automobile, upon a public street and highway of Texas, at the unreasonable, imprudent and unlawful speed of 72 miles per hour which was then and there a speed greater than was reasonable and prudent under the conditions then existing, at which time and place the prima facie reasonable and prudent speed limit applicable was 60 miles per hour, against the peace and dignity of the State."

Appellant urges that the prosecution should be ordered dismissed because the complaint should have been quashed upon his motion.

The complaint is in all material respects identical with the complaint in Oliver v. State, 165 Texas Cr. Rep., 136, 305 S.W. 2d 604. The overruling of a motion to quash similar to that urged by appellant was the sole question presented in the Oliver case.

Construing the holding in Rowland v. State, 166 Texas Cr. Rep., 118, 311 S.W. 2d 831 (in which a second motion for rehearing was overruled the same day), the attack upon the complaint against Oliver was overruled and Oliver's conviction was affirmed.

Upon authority of Oliver v. State and Rowland v. State, supra, we find the complaint sufficient.

Appellant's motion for rehearing is overruled.

MORRISON, Judge (concurring).

I wish to add that the opinion in Oliver, supra, does not indicate a change in the thinking of the members of this court, as appellant suggests. The 1941 Act was known as Article 827a, Sec. 8, V.A.P.C.

DAVIDSON, Judge (dissenting).

The position in which my brethren find themselves, which is that neither can agree with the other as to what the speed laws are which they say are presently in existence in this state, convinces me all the more of the correctness of my views as expressed in my dissenting opinion in the Rowland Case, 166 Texas Cr. Rep. 118, (311 S.W. 2d 831) to the effect that there is now no valid law in this state regulating the rate of speed at which motor vehicles are to be operated over the highways of the state.

There is no valid speed law in this state, and appellant's motion to quash the complaint should have been sustained.

I respectfully dissent.