Aubra Lee **CROMER**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 36443.

Court of Criminal Appeals of Texas.

Feb. 5, 1964.

Brown & Shuman by Dean Shuman, Lubbock, for appellant.

Fred E. West, County Atty., Broadus A. Spivey and Wm. Quinn Brackett, Asst. Dist. Attys., Lubbock, and Leon B. Douglas, State's Atty., Austin, for the State.

WOODLEY, Presiding Judge.

The offense is speeding; the punishment, a fine of $101.00.

Trial was before a jury in County Court at Law No. 2 of Lubbock County upon a complaint upon which the appellant had been convicted in Justice Court and had appealed.

The complaint alleged, and the court's charge required the jury to find, in order to convict, that the appellant on or about December 31, 1962, drove a passenger car on a public highway in Lubbock County at the unreasonable, imprudent and unlawful speed of 76 miles per hour which was then and there a greater speed than was reasonable and prudent under the conditions then existing, at which time and place the prima facie reasonable and prudent speed limit applicable was 55 miles per hour.

The evidence shows that the appellant was, on the 31st day of December, 1962, at approximately 7:18 P.M., driving and operating an automobile on Highway 87 South of Lubbock when he was stopped by Texas Highway Patrolmen J. M. Cowan and H. D. Cleckler, Jr., who immediately prior thereto were parked at a location some 20 to 30 feet off the paved highway at the edge of a cotton field with lights off.

Installed in the patrol car was a radar set known as the Traffic Master 400 which was described as a portable type radar set used by the Highway Patrol throughout the state.

The officers were operating the speed testing device or radar when the appellant drove by at a speed which the officers testified was registered or measured by the radar at 76 miles per hour.

The evidence shows that the posted prima facie reasonable and prudent speed at the location was 55 miles per hour at the time in question.

There is evidence in the record tending to show that there were special hazards in the zone, and testimony from one of the patrolmen that even before the appellant entered the radar beam he could see him coming around the curve and could tell by the way he was approaching and by the sound of his vehicle that he was driving faster than he should have been. However, the patrolmen agreed that their testimony as to the speed the appellant was driving was based upon their observation of a reading of the meter on the radar set they were operating.

The appellant was the only other witness. He testified that it was a rather dark night but the weather was perfect and the visibility was perfect when the patrolmen stopped him; that the '62 Lincoln Continental he was driving was new—had been driven 1500 to 2000 miles—; the power brakes were in good condition; the lights were on and were working properly; the tires were good and there was nothing mechanically wrong with the car.

The appellant testified that he was not going 76 miles per hour; that he had

been driving around 50 miles per hour but could not say how fast he was going when he passed and saw the lights of the patrol car. He also testified that he was not driving at a speed that was dangerous and estimated his speed at between 50 and 55 miles per hour.

The jury resolved the fact issues against the appellant and by their verdict found him guilty as charged in the complaint.

Three grounds are relied upon for reversal.

The first and second relate to the contention that the prosecution emanated from an arrest made by officers who, in violation of Art. 803a Vernon's Ann.P.C., were designedly remaining in hiding and lying in wait unobserved in order to trap those persons, including the appellant, suspected of violating the speed law. Appellant's first complaint is that the court erred in refusing to grant his motion for instructed verdict. His second point is that the court erred in failing and refusing to charge the jury concerning the fact issue.

The state's position is that no lying in wait unobserved or designedly remaining in hiding, in violation of Art. 803a V.A. P.C., is shown by the evidence and that even so, Art. 803a is and has been declared and held by this Court to be unconstitutional and void.

While there would appear to be merit in the state's position that the automobile in which the officers were operating the radar was not hidden, but was visible to oncoming traffic, Art. 803a contains a proviso that "any officer pursuing or lying in wait in any vehicle other than a motorcycle shall be held to be designedly remaining in hiding as defined in this Act."

■ We are in accord with the state's position that Art. 803a V.A.P.C. which contains such provision and which makes it the duty of the district or county attorney to dismiss any and all prosecutions wherein it is shown that the arrest was made by designedly remaining in hiding or lying in wait unobserved in order to trap those suspected of violating the laws of this state relating to speed is unconstitutional for the reason set out in Scoggin v. State, 117 Tex.Cr.R. 294, 38 S.W. 2d 592, holding other portions of the statute void. This Court so held in Ex parte Heiling, 128 Tex.Cr.R. 399, 82 S.W.2d 644. Such has been the ruling of the Attorney General since 1939. Atty. General's Opinion No. 0–431 dated March 7, 1939.

We direct attention to the fact that the opinion in Ex parte Heiling shows that the charge was that the arresting officer designedly remained in hiding as well as that he was not wearing the uniform, etc., required by Art. 803a.

Appellant's remaining claim for reversal is that the court erred in failing to grant his motion for instructed verdict for the insufficiency of the evidence.

This claim is predicated upon the contention that the conviction is based solely upon testimony by two non-expert witnesses concerning matters with which they are not familiar or trained to understand, and that the test of accuracy of the radar set, as to the speed of appellant's automobile, required under the opinion of this Court in Wilson v. State, 168 Tex.Cr.R. 439, 328 S.W.2d 311, was not met.

The patrolmen agreed that they had not been trained and were not experts on the mechanics of the radar set, or how to repair it, but testified that they had received instructions and had been trained in its operation and how to properly test it for accuracy.

The testimony of the patrolmen shows that they made tests, both some hour before and immediately after the appellant's speed was measured. These tests were made by the use of a tuning fork that was furnished them with the set, which when struck and held before the radar causes the radar meter to show a reading of 65 miles per hour. This, according to

their instructions, was the reading which would show if the radar set was operating correctly.

The other test was by driving the patrol car with the radar set on, measuring the speed of the car against still objects and comparing the reading shown by the radar meter and the patrol car speedometer. Both tests, the patrolmen testified, showed that the radar set was operating correctly.

The patrolmen testified that they tested the radar set immediately after the appellant left because he had led them to believe there would be a trial.

In Wilson v. State, 168 Tex.Cr.R. 439, 328 S.W.2d 311, the test of accuracy by comparison of the speedometer reading of 60 miles per hour as the patrol car passed the radar unit was held insufficient because there was no showing what the radar unit registered at such time. Here the readings were shown to be identical.

This appears to be the first case to reach this Court where the use and accuracy of a portable radar set installed in an automobile has been brought before us.

The testimony of the officers regarding the radar measured speed of appellant's automobile was introduced without objection. The question then is not as to its admissibility, but whether it has probative value and is sufficient to sustain a finding by the jury that the appellant was driving at an unlawful speed.

We hold that the testimony of the patrolmen as to the speed shown by the radar set they were trained to operate and to test for accuracy, and which they did operate and test and found accurate, was sufficient to sustain a finding by the jury that the appellant was driving at a speed in excess of 70 miles per hour.

To sustain the contention of the appellant would be to require the state, in every prosecution involving the speed of a vehicle in which it relied upon radar measurement, to call witnesses who could qualify as experts in the field of radar; who understood the principles by which speed was measured and registered on the set and the repair of radar sets, and who were qualified to testify as to the manner and means whereby the accuracy of a radar set may be tested by the use of a tuning fork, as well as the accuracy of the tuning fork furnished with the set.

All this aside, the testimony of the officers shows that the radar and speedometer test showed the same measurement of speed. We are not prepared to hold that the state was required to call qualified experts and prove the accuracy of the speedometer in the patrol car. The testimony introduced was sufficient evidence of the accuracy of the radar to give probative value to its measurement of speed.

We find the evidence sufficient and no reversible error appears.

The judgment is affirmed.

MORRISON, Judge (dissenting).

We are once again met with the problem which confronted us in Hill v. State, 158 Tex.Cr.R. 313, 256 S.W.2d 93, regarding scientific tests. In the case at bar, the accuracy of the radar unit depended upon the accuracy of a tuning fork or the speedometer of the patrol car. Neither was shown to have been checked by anyone.

In Holley v. State, Tex.Cr.App., 366 S.W.2d 570, which reached this Court last year, there was proof that the speedometer had been calibrated for accuracy either at Austin, Corpus Christi or San Antonio at least every three months, plus the fact that the tuning fork had been brought to Austin and checked for accuracy by technicians.

No such proof as to either the speedometer or the tuning fork appears in the the case at bar. Attention is called to a portion of our opinion in Wilson v. State, 168 Tex.Cr.R. 439, 328 S.W.2d 311, where-

in we said, "Patrolman Spellman testified that he oversaw the calibration of the speedometer of the patrol car in March, that it was calibrated in June and no correction was needed * * *."

I would reverse this conviction because of the insufficiency of the evidence to show that the scientific device, which furnished the only proof upon which this conviction may be sustained, was accurate.