Appellant=s Motion for Rehearing Overruled; Opinion of April 3, 2007
Withdrawn; Affirmed and Substitute Memorandum Opinion filed May 17, 2007








Appellant=s Motion for Rehearing Overruled; Opinion of April 3,
2007 Withdrawn; Affirmed and
Substitute Memorandum Opinion filed May 17, 2007.

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-05-01092-CR

_______________

 

ARTHUR E. HURD, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                          
                                     

On Appeal from the 232nd District Court

Harris County, Texas

Trial Court Cause No. 1015377

                                                                                                                  
                             

 

S U B S T I T U T E   M E M O R A N
D U M   O P I N I O N

Appellant=s motion for rehearing is overruled. 
We withdraw our opinion dated April 3, 2007, and issue this substitute
memorandum opinion.  After the trial court denied his pre-trial motion to
suppress, appellant, Arthur Hurd, pleaded guilty to possession of marijuana
weighing between five and fifty pounds.  The trial court sentenced appellant to
three years= confinement.  In one issue, appellant contends the
trial court erred by denying his motion to suppress.  Because all dispositive
issues are clearly settled in our jurisprudence, we issue this memorandum
opinion and affirm.   See Tex. R. App. P. 47.4.








I.  Background

At the hearing on
the motion-to-suppress, the trial court heard testimony from Trooper Kevin
James of the Baytown highway patrol service.  On February 2, 2005, Trooper
James used his radar to clock appellant going 71 mph in a 65 mph speed zone and
stopped him for speeding.  When Trooper James approached the passenger-side
window, he saw a gutted cigar blunt, typically used to smoke marijuana, and
green residue that appeared to be marijuana and residue from a cigar on
appellant=s shirt.  While standing at the window, he thought he
smelled raw marijuana coming from the car; however, he was not certain because
it was cold and windy that night.  Trooper James took appellant=s driver=s license and went
back to his car to verify the information.  When Trooper James returned to
appellant=s car, he noticed the residue on appellant=s shirt had been
removed.  Trooper James gave appellant a warning for the speeding violation and
asked him if he could search the vehicle.  Appellant refused.  Trooper James
asked appellant to exit the vehicle.  Once appellant was outside his vehicle,
Trooper James asked him about the residue he had earlier seen on his shirt. 
Trooper James told appellant that it appeared to be marijuana.  Appellant
responded that the residue was actually crumbs from a candy bar he had been
eating.  While Trooper James was calling for a canine unit, appellant
complained about the cold weather.  After locating  a canine unit, Trooper
James told appellant that he could sit in the patrol car.  Inside the patrol
car, Trooper James smelled marijuana on appellant.  

Deputy Almeida,
dog handler from the canine unit, also testified.  When he arrived, the drug
dog sniffed the exterior of the car.  The dog alerted to the driver=s side.  Deputy
Almeida then opened the driver=s side door.  The dog alerted to the
interior of the car.  Deputy Almeida saw small pieces of green marijuana on the
driver=s seat.  He did
not find a candy bar wrapper. The police took the keys from the ignition and
opened the trunk where they found marijuana.  

 








II.  Standard Of Review 

In reviewing a
trial court=s ruling on a motion to suppress, we apply a
bifurcated standard, giving almost total deference to the trial court=s determination of
historical facts supported by the record, and reviewing de novo the trial court=s application of
the law of search and seizure.  Carmouche v. State, 10 S.W.3d 323, 327
(Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 88B89 (Tex. Crim.
App. 1997);  Marsh v. State, 140 S.W.3d 901, 905 (Tex. App.CHouston [14th
Dist.] 2004, pet. ref=d).  In a motion-to- suppress hearing, the
trial court is the sole trier of fact and the sole judge of the credibility of
the witnesses and the weight to be given their testimony.  State v. Ross,
32 S.W.3d 853, 855 (Tex. Crim. App. 2000); Marsh, 140 S.W.3d at 905. 
The trial court is free to believe or disbelieve all or any part of a witness=s testimony, even
if the testimony is uncontroverted.  Ross, 32 S.W.3d at 855; Marsh,
140 S.W.3d at 905.  When, as in this
case, the trial court does not make explicit findings of fact in ruling on a
motion to suppress, we review the evidence in the light most favorable to the
trial court=s ruling.  Carmouche, 10 S.W.3d at 327B28.  

III. Discussion 

Appellant contends
the trial court erred in denying his motion-to-suppress the seized marijuana
because (1) the State failed to lay a proper foundation for Trooper James=s testimony
regarding the radar evidence, and (2)  Trooper James lacked reasonable
suspicion to detain appellant and call for a canine sweep, and the officers did
not have probable cause to conduct a warrantless search of appellant=s vehicle .

A.      Radar
Evidence 








In his brief,
appellant seems to argue that the initial traffic stop was not lawful because
the State failed to lay the proper foundation regarding calibration and
accuracy of Trooper James=s radar at the motion-to-suppress hearing.
We disagree.  Appellant relies on Wilson v. State for the proposition
that a legal traffic stop for speeding must be coupled with evidence regarding
the accuracy of the radar device at that particular location both before and
after the traffic stop.  328 S.W.2d 311 (Tex. Crim. App. 1959).  However, an officer=s testimony that
he was trained to test the radar for accuracy and operate the device provides
sufficient predicate to support admission of radar evidence.  Masquelette v.
State, 579 S.W.2d 478, 481 (Tex. Crim. App. 1979) (citing Cromer v.
State, 374 S.W.2d 884, 888 (Tex. Crim. App. 1964); Gano v. State,
466 S.W.2d 730, 732 (Tex. Crim. App. 1971)). 

At the
motion-to-suppress hearing, Trooper James testified that he had been employed
by the highway patrol service for nine years and was qualified to operate a
radar unit.  He further testified that troopers calibrate the radar at the
beginning of their shifts and after each traffic stop. On the day of appellant=s arrest, he
followed these Department of Public Safety requirements.  Accordingly, we
conclude that the State laid the proper foundation for Trooper James=s testimony
regarding accuracy or reliability of the radar.  See Maysonet v. State,
91 S.W.3d 365, 369B71 (Tex. App.CTexarkana 2002,
pet. ref=d) (holding radar
evidence was properly admitted when officer testified he had used radar
equipment for several years and had calibrated and tested his radar unit one
day before he stopped the defendant for speeding). 

B.      Reasonable
Suspicion to Detain and Probable Cause to Search 

Appellant contends
his Fourth Amendment rights were violated because Trooper James did not have
reasonable suspicion of criminal activity to justify continued detention after
issuing a warning ticket.  Appellant also contends the search was not
justifiable because Trooper James did not have reasonable suspicion that the
car contained narcotics.  In response, the State argues Trooper James had a
reasonable suspicion to detain appellant because he observed green marijuana
residue and cigar residue on appellant=s shirt.  He also
observed  a hollowed-out cigar blunt, typically used to smoke marijuana.  We
agree with the State. 








A routine traffic
stop is a detention, and must pass the reasonableness test under the Fourth
Amendment to the United States Constitution.  See Simpson v. State, 29
S.W.3d 324, 327 (Tex. App.CHouston [14th Dist.] 2000, pet. ref=d).  To be
reasonable, the traffic stop must be temporary and last no longer than is
necessary to effectuate the purpose of the stop.  Davis v. State, 947
S.W.2d 240, 245 (Tex. Crim. App. 1997).  During a routine traffic stop, an
officer may demand identification, a valid driver=s license, and
proof of insurance from the driver, and also may check for outstanding
warrants.  Id. at 245 n.6.  Once the purpose of the traffic stop has
been satisfied, the stop must not be used as a fishing expedition for unrelated
criminal activity.  Simpson, 29 S.W.3d at 327 (citing Ohio v.
Robinette, 519 U.S. 33, 40B41 (1996) (Ginsburg, J., concurring)).  
Rather, any further detention must be based on articulable facts.  Id.  Therefore,
once the purpose of the original detention has been effectuated, any continued
detention must be supported by some additional reasonable suspicion that
something out of the ordinary is occurring and some indication that the unusual
circumstance is related to crime.  Id.    

Reasonable
suspicion exists if the officer has identified specific and articulable facts,
combined with rational inferences from those facts that lead him to reasonably
suspect a particular person has engaged, is engaged, or will soon engage in
criminal activity.  Garcia v. State, 43 S.W.3d 527, 530 (Tex. Crim. App.
2001). The determination is made by considering the totality of the
circumstances.  Id.   








In Simpson v.
State, we explained the relationship between an officer=s reasonable
suspicion of criminal activity and a defendant=s refusal of a
search, relying on rationale from the United States Supreme Court=s decision in  Ohio
v. Robinette and the Court of Criminal Appeals=s decision in Davis
v. State.  Simpson, 29 S.W.3d at 328.  In Robinette, the
Supreme Court held that continued detention and a request to search the
detainee=s car following a
traffic stop was reasonable, where consent was given, even though no
circumstances were noted that would have constituted reasonable suspicion of
any criminal activity.  Id. (citing Robinette, 519 U.S. at 38). 
Conversely, in Davis, the Court of Criminal Appeals found the officers= conduct
unreasonable where, after the detainee refused consent to search his car, the
officer nevertheless detained the vehicle. Consequently, the occupants had no
other means to depart.  Id.  (citing Davis, 947 S.W.2d at 241).
We interpreted Robinette and Davis to hold that an officer may
request consent to search a vehicle after a traffic stop but may not detain the
occupants or vehicle further if such consent is refused unless reasonable
suspicion of some criminal activity exists.  Id.  

A sniff by a
trained canine outside of an automobile is not a search within the meaning of
the Fourth Amendment.  See Mohmed v. State, 977 S.W.2d 624, 628 (Tex.
App.CFort Worth 1998,
pet. ref=d); see also
United States v. Place, 462 U.S. 696, 707 (1983); Crockett v. State,
803 S.W.2d 308, 310 n.5 (Tex. Crim. App. 1991).  Thus, temporary detention of
an automobile to allow an olfactory inspection by a police dog trained to
detect the odor of illegal drugs is not offensive to the Fourth Amendment when
based on the officer=s reasonable suspicion that the automobile
contains narcotics.  See Mohmed, 977 S.W.2d at 628; Crockett, 803
S.W.2d at 311.

The parties
disagree relative to the residue on appellant=s shirt.  Trooper
James testified it appeared to be a combination of green marijuana residue and
cigar residue.  In contrast, appellant testified that the residue was crumbs
from a candy bar he was eating before he was stopped.  Because the trial court
was the sole judge of the credibility of the witnesses, we give deference to
the trial court=s findings.  See Carmouche, 10
S.W.3d at 327.  Under our standard of review, when the trial court does not
make explicit findings of fact, we review the evidence in the light most
favorable to the trial court=s ruling; we assume that the trial court
made implicit findings of fact supported in the record that buttress its
conclusion. Id.  Therefore, we defer to the trial court=s determination
that the substance was marijuana residue and cigar residue, not candy bar
crumbs. 








Appellant cites McQuarters
v. State in support his argument that Trooper James had no reasonable
suspicion to continue detention.[1] 
58 S.W.3d 250 (Tex. App.CFort Worth 2001, pet. ref=d).  In McQuarters,
the officer issued two warnings for traffic violations, the defendant refused
consent to search his car, a canine unit was called to the scene, and the
subsequent search revealed drugs.  Id. at 256B57.  At the McQuarters
motion-to-suppress hearing, the officer testified that he did not smell
marijuana coming from the car while standing at the car door.  Id. at
257.  As a result, the court of appeals held the officer did not have
sufficient facts to reasonably suspect the defendant was hiding narcotics.  Id. 
Focusing on this fact, appellant argues McQuarters is similar
because Trooper James testified he was not certain that he smelled marijuana
while standing at appellant=s car door.  However, the State argues,
and we agree, that McQuarters is factually distinguishable. 








Although the
videotape depicts Trooper James asking appellant about residue on his shirt
after appellant exited the vehicle, Trooper James clearly testified that he
suspected illegal activity while standing at the passenger-side  window because
he observed marijuana and cigar residue on appellant=s shirt and a
marijuana blunt.   Trooper James also observed that the residue was removed
when he returned to the car.  Moreover, the videotape includes the conversation
between Trooper James and appellant while they were waiting in the patrol car
for the canine unit.  During the conversation, appellant told Trooper James
that he had Ano probable cause@ to detain him for
the search.  Trooper James responded that he only needed reasonable suspicion
and he based it on the fact that he saw marijuana on appellant=s shirt.  Based on
these articulated facts, combined with rational inferences, Trooper James
reasonably could have suspected that appellant was engaged in or about to be
engaged in criminal activity.  See Shelley v. State, 101 S.W.3d 606, 611
(Tex. App.CHouston [1st Dist.] 2003, pet. ref=d) (finding
officers had reasonable suspicion to attempt to detain appellant based on their
observation of a plastic bag containing a substance that appeared to be
narcotics); Mohmed, 977 S.W.2d at 628 (finding officers had reasonable
suspicion to detain defendant for a canine sweep of exterior of car where
officers smelled odor of burned marijuana coming from car).  Moreover,
information obtained through observation of an object in plain sight may be the
basis for reasonable suspicion of illegal activity.  Texas v. Brown, 460
U.S. 730, 739 n.4 (1983).  Therefore, after issuing a warning ticket and
hearing appellant=s refusal of consent to search, Trooper
James properly detained appellant based on his reasonable suspicion that
appellant was engaged in criminal activity.[2] 
See Simpson, 29 S.W.3d at 328.  Considering the totality of the
circumstances, Trooper James had a reasonable suspicion of illegal activity
when he detained appellant for the canine search. 

Appellant also
contends dog handler Officer Almeida lacked probable cause and violated the
Fourth Amendment when he opened the door of the vehicle without any positive
alert from the drug dog.  However, both Trooper James and Officer Almeida
testified that the dog alerts through passive signals by either standing or
sitting.  Trooper James identified the portion of the video depicting the dog
alerting to the driver=s side door of the car by sitting down in
front of the driver=s door.   

When a trained and certified
narcotics dog alerts an officer to apparent evidence or contraband, probable
cause exists to search a vehicle.  Harrison v. State 7 S.W.3d 309, 311
(Tex. App.CHouston [1st Dist.] 1999, pet. ref=d); Josey v. State, 981 S.W.2d
831, 846 (Tex. App.CHouston [14th Dist.] 1998, pet. ref=d); Ortiz v. State, 930 S.W.2d 849,
856 (Tex. App.CTyler 1996, no pet.).  Therefore, once the dog, which was trained to
recognize and identify the location of drugs, alerted to the automobile,
reasonable suspicion of the presence of narcotics escalated into probable cause
to search the vehicle.

 

 

 








Accordingly, we
overrule appellant=s sole issue.  The judgment of the trial
court is affirmed.



 

 

 

 

/s/      Charles W. Seymore

Justice

 

Judgment
rendered and Substitute Memorandum Opinion filed May 17, 2007.

Panel
consists of Justices Frost, Seymore, and Guzman.

Do Not
Publish C Tex.
R. App. P. 47.2(b).

 

 

 

 









[1]  To support his argument that Trooper James did not have reasonable
suspicion to detain for a canine sweep, appellant cites Walter v. State,
997 S.W.2d 853 (Tex. App.CAustin 1999), reversed by Walter
v. State, 28 S.W.3d 538 (Tex. Crim. App. 2000).   However, that decision
was reversed.





[2]  Appellant also contends his detention was Aunlawfully prolonged@ because thirty-two minutes elapsed from the time appellant was
initially stopped until the canine unit arrived. The only case appellant cites
is  $217,590.00  in U.S. currency v. State, where the court of appeals
found detention for twenty-two minutes while waiting for a canine unit was
proper because the officer articulated facts under the totality of
circumstances to show he had reasonable suspicion.  54 S.W.3d 918, 925 (Tex.
App.CCorpus Christi 2001, no pet.).  Therefore, the court=s reasoning was based on a finding of reasonable
suspicion, not on a specific number of minutes, as appellant implies.